Mary **SELZER** and Ann Juliano
Jawin, Plaintiffs,

v.

The **BOARD OF EDUCATION OF the
CITY OF NEW YORK**, Frank J. Mac-
chiarola, as Chancellor of the Board of
Education of the City of New York, and
Nathan Quinones, as Executive Di-
rector of the Division of High Schools
of the Board of Education of the City
of New York, Defendants.

No. 82 Civ. 7783(MEL).

United States District Court,
S.D. New York.

Sept. 19, 1986.

Hughes Hubbard & Reed, New York City, for plaintiffs; Philip H. Curtis, Theodore V.H. Mayer, Ronald R. Allen, Jr., Linda Trummer-Napolitano, of counsel.

Frederick A.O. Schwarz, Jr., Corp. Counsel of City of New York, New York City, for defendants; Marilyn Richter, Regina Saat, Christine Simone, of counsel.

LASKER, District Judge.

Mary Selzer and Ann Juliano Jawin, two female guidance counselors employed by defendant Board of Education of the City of New York ("Board of Education"), bring this action on behalf of a purported class under the 14th Amendment of the Constitution of the United States, Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*) ("Title VII"), Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681) and the Civil Rights Act of 1871 (42 U.S.C. § 1983). They allege that since at least 1972, the defendants, who are the Board of Education, Frank J. Macchiarola (Chancellor of the Board of Education) and Nathan Quinones (Executive Director of the Division of High Schools of the Board of Education), have engaged in a continuing pattern and practice of discrimination on the basis of sex, by using employment selection procedures which disproportionately exclude women from administrative and supervisory positions in the high school system. (Amended Class Action Complaint ¶ 18) ("Complaint").

Plaintiffs allege that over at least the past eleven years, defendants have used a uniform, systemwide procedure for filling all high school supervisory and administrative positions, as set forth in a Board of Education guideline entitled "Special Circular No. 30–R". (Complaint ¶¶ 18 and 26). Under this procedure applicants who meet minimum education and experience requirements are selected for supervisory and administrative positions by a screening process. A first-level committee selects certain candidates for interviews, interviews them, and recommends a few candidates for promotion. (Complaint ¶ 19(a)–(d)). Then a second-level committee interviews and selects a finalist, and submits its recommendation to either the Chancellor or the Executive Director for the final decision. (Complaint ¶ 19(d)). Plaintiffs allege that this screening procedure employs subjective and non-job-related selection criteria which "have a disparate impact on and discriminate unlawfully against women." (Complaint ¶ 20(c)).

Plaintiffs move pursuant to Fed.R.Civ.P. 23(a) and 23(b)(2) to certify a class consisting of

all women who have been, are or may become qualified to apply for the positions of high school Principal, Assistant Principal in any subject or administrative area, or for administrative or supervisory positions in the divisional or central headquarters for the New York City high school system.... [and] all women who would have become qualified for those positions but for the chilling effect of defendants' discriminatory practices.

Complaint ¶ 6.

Defendants object to class certification on the grounds that the complaint does not raise common questions of law or fact and that plaintiffs have made no showing that their claims of discriminatory treatment are typical of those of the proposed class members, as required by Rule 23(a). Defendants also oppose class certification on the grounds that plaintiffs have not satisfied the requirements of Rule 23(b)(2) because they have failed to show that defendants acted on grounds generally applicable to the purported class as a whole. Defendants argue further that if class certification is granted, the class should not include (1) future applicants, (2) persons who allegedly have been deterred from applying for the positions in question, or (3) women who are currently qualified to apply for the position of high school principal. Finally, defendants argue that those of plaintiffs' claims that date back to 1972 are time barred under 42 U.S.C. § 2000e–5(e).

## I.

## Rule 23(a)

■ This class certification dispute centers on the Rule 23(a) requirements of commonality and typicality. These two requirements may be considered together, as they "tend to merge." *General Telephone Co. v. Falcon*, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 2370 n. 13, 72 L.Ed.2d 740 (1982); *Meyer v. Macmillan Publishing Co.*, 95 F.R.D. 411, 413 n. 3 (S.D.N.Y.1982).

Defendants contend that the plaintiffs' complaint does not meet the commonality requirement of Rule 23(a)(2) on three grounds: first, because "[a] facial attack on the Special Circulars does not raise a common question of law or fact because the courts have repeatedly approved these circulars," (Defendants' Memorandum of Law in Opposition to Class Certification at 15) ("Defendants' Memorandum"); second, because "every promotion under [the Board of Education's] decentralized process presents unique circumstances,"[1] (*id.* at 20); and third, because plaintiffs "have failed to provide any evidence of a pattern or practice of discrimination on a classwide basis." *Id.* They argue that Ms. Selzer's and Ms. Jawin's claims do not meet the typicality requirement of Rule 23(a)(3) because the "record conclusively refutes plaintiffs' allegations that they have failed to obtain promotions because of system-wide, sex-biased discrimination." *Id.* at 26.

Such arguments are premature on a motion for class certification. The motion to be decided here is one for class certification, not summary judgment. A motion for class certification is not the occasion for a mini-hearing on the merits; there is nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action.

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974). On the contrary,

> [o]nce plaintiffs have demonstrated ... a reasonable basis for crediting the assertion that aggrieved individuals do exist in the broader class they propose, then it is inappropriate for this Court to attempt to resolve material factual disputes on a motion for class certification.

*Meyer v. Macmillan Publishing Co.*, 95 F.R.D. at 413–14 (quoting *Kuck v. Berkey Photo, Inc.*, 81 F.R.D. 736, 739 (S.D.N.Y. 1979) (footnotes omitted)).

The Supreme Court's decision in *General Telephone v. Falcon*, 457 U.S. at 147, 102 S.Ct. at 2364, does not demand an inquiry into the merits of the case. In *Falcon*, the Supreme Court held only that "[w]ithout any specific presentation identifying the questions of law or fact that were common to the claim of respondent and of the members of the class he sought to represent, it was error for the District Court to *presume* that the claims of the putative representative plaintiff, a Mexican-American, were typical of other claims against his employer by other Mexican-American employees and applicants." *Id.* at 158, 102 S.Ct. at 2371 (emphasis added).

The recent opinion of the Court of Appeals for the Second Circuit in *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590 (2d

---

1. Defendants' argument that the complaint does not present common questions of law and fact because the Board of Education's selection procedure is decentralized comes the closest to being a valid objection to class certification rather than an argument on the merits. However, defendants themselves state that the Board of Education and the Chancellor, working together with an advisory council, developed the uniform selection procedure set forth in Special Circular No. 30–R, (Defendants' Memorandum at 3–4), that "there are certain uniform procedures which are followed in filling every super-

visory position concerning advertisement, approval of the applicant pool for adequate numbers of women and minorities, committee screening and interviewing by two committees," (*id.* at 17), and that "the Chancellor and the Executive Director do have the power to approve or disapprove the candidates recommended by the [screening committees]...." (*Id.* at 19). It is evident that defendants' selection procedure is sufficiently uniform and centralized to present issues common to the claims of all the class members.

Cir.1986), has refined the holding of *Falcon* concerning the showing necessary to meet the typicality and commonality requirements of Rule 23(a). In *Rossini*, the district court, relying on *Falcon* and finding that the named plaintiff's "individual claims were insufficiently similar to those made on behalf of the class," *id.* at 596, had decertified a class of female professional employees alleging discrimination in promotion and training at an advertising agency. The Court of Appeals held that this decertification was an abuse of discretion. Recognizing that "the primary thrust of *Falcon* was that satisfaction of Rule 23(a) requirements may not be *presumed*," *id.* at 597 (emphasis in original), the court held that the named plaintiff had satisfied the requirements of Rule 23(a) by offering evidence

> to show that many of the decisions affecting employees' opportunities for transfer, training and promotion were made by the same, central group of people within O & M. Thus [the named plaintiff's] evidence, if believed, would indicate that O & M discriminated "in the same general fashion" against [the named plaintiff] in her quest for transfer and against other class members seeking training or promotion.

*Id.* at 598 (citing *Falcon*, 457 U.S. at 159 n. 15, 102 S.Ct. at 2371 n. 15).

Plaintiffs' affidavits provide the evidence required by *Rossini* which, if believed, would support their allegations that the Board of Education has discriminated against them individually "in the same general fashion" as against the proposed class. Ms. Selzer's affidavit states that she has applied and been rejected for the position of Assistant Principal-Guidance at least twenty-two times in approximately eighteen different high schools and for the position of Supervisor-Guidance for Brooklyn, Manhattan and the Bronx. (Affidavit of Mary Selzer at ¶ 10). Ms. Jawin's affidavit states that she had applied for administrative and supervisory positions at least forty times in approximately twenty-seven high schools in all five boroughs. (Affidavit of Ann Juliano Jawin at ¶ 9). Similarly,

five proposed class members state that they also have applied and been rejected for high school supervisory and administrative positions numerous times. (Affidavits of Gloria Malden Kaplan, Alma DeLuca, Ann-Jean Paci-Levine, Rose Marie Rita Armetta, Bertha Spielman and Marie Veronica Harrison). These five women, like Ms. Selzer and Ms. Jawin, allege that they are amply qualified for the positions they have sought and that the Board of Education's screening process discriminates against them on the basis of their sex.

In addition, Ms. Selzer and Ms. Jawin have submitted the affidavit of statistician Michael P. Ward, the vice-president of a California economic consulting firm, who specializes in labor economics and econometrics. Using figures which he states were provided to plaintiffs by the City and State of New York, Mr. Ward computed the statistical significance of the difference between the proportion of women in various Board of Education high school level administrative and supervisory positions and the proportion of women in the certified labor pool for such positions. Mr. Ward has concluded that the results "reveal large gender differences between the number of women currently in supervisory positions and the number of women who would be expected to fill these positions in a sex neutral system." (Affidavit of Michael P. Ward at ¶ 10). For instance, Mr. Ward computed that while the qualified labor pool for the position of high school principal in New York City is 30.1% female, only 21% of incumbent principals actually are female. Mr. Ward computed that a difference of this magnitude could be expected to occur only 4.1% of the time if principals were chosen in a sex-neutral fashion. (Ward Affidavit at ¶ 6). Similarly, Mr. Ward computed that the disparity between the percentage of women qualified for the position of Assistant Principal in Administration and the number of female assistant principals in that category would be expected to occur only 5.6% of the time if the selections were made in a sex neutral manner. (Ward Affidavit at ¶ 7).

Defendants have produced their own set of statistics to support their argument that Ms. Jawin's and Ms. Selzer's claims are not typical of the claims of the proposed class members. According to defendants' data, there is only a one percent disparity between the total percentage of female assistant principals and the percentage of women in the qualified labor pool for that position, and there is a higher proportion of female administrators than would be expected from the percentage of women in the appropriate qualified labor pool. (Second Supplementary Affidavit of Marilyn Richter, Assistant Corporation Counsel, in Opposition to Class Certification at ¶ 6).

■ Since it is unclear whether plaintiffs and defendants are basing their computations on the same data, and since plaintiffs and defendants have not broken down their statistics in the same manner, it is impossible to determine whose position is correct. In any event, such a determination, going as it would to the merits of the case, would also be premature. The sum of the affidavits submitted by Ms. Selzer, Ms. Jawin and the five proposed class members is sufficient to establish the existence of a class as to whom there are common questions of law and fact and the typicality of the named plaintiffs' claims.

## II.

### Rule 23(b)(2)

Certification of a class pursuant to Rule 23(b)(2) is appropriate where:

the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Fed.R.Civ.P. 23(b)(2). Illustrative of cases appropriate for Rule 23(b)(2) treatment are "actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration." Fed.R.Civ.P. 23 Advisory Committee Note (1966); *accord* 3B J. Moore, *Moore's Federal Practice* ¶ 23.40[2], at 23–291 (2d ed. 1985) ("A suit under the Civil Rights Act by an employee challenging employment and promotional discrimination is, by the nature of the claim asserted, appropriate for class action under (b)(2).").

■ Defendants argue that certification under Rule 23(b)(2) is inappropriate because "plaintiffs' conclusory allegations of widespread discrimination are contradicted by the evidence." (Defendants' Memorandum at 29). We have already declined to rule on the merits of the case on this motion for class certification. Clearly, certification under Rule 23(b)(2) is appropriate in the present case, where plaintiffs allege that the Board of Education's procedures and policies have had a discriminatory effect on the entire class.[2]

Since the proposed class meets the requirements of Rule 23(a) and 23(b)(2), the motion for class certification is granted subject to the limitations expressed below.

### III.

### Definition of the Class

#### A. The Time Limitations of Title VII

Plaintiffs have requested the certification of a class composed of all women who have been, are or may become qualified for promotion to supervisory or administrative positions within the New York City High School system and its administration from March 24, 1972, the date Title VII became applicable to public employees,[3] until the

---

**2.** The main case which defendants cite to support their Rule 23(b)(2) argument, *Martin v. Easton Publishing Co.,* 73 F.R.D. 678 (E.D.Pa.) *reh'g denied,* 74 F.R.D. 439 (1977), is markedly distinguishable from the case at hand. There, the court denied certification where the proposed representative plaintiff, a discharged female reporter, had not even "factually alleged

that any other female was discharged or otherwise subject to the same treatment." *Id.* at 680.

**3.** Title VII was expanded to include public employees by the Equal Employment Opportunity Act of 1972, Pub.L. No. 92–261 § 2(f), 86 Stat. 103, whose effective date was March 24, 1972. *See* 42 U.S.C. §§ 2000e(a), (b), (f), (h).

date the action is terminated. Defendants, however, argue that those proposed class members with Title VII claims arising prior to the three hundred day period before Ms. Selzer and Ms. Jawin filed their EEOC complaints are precluded from raising their claims by the time limitations imposed by Title VII, and hence cannot be members of the class.[4]

Plaintiffs suing under Title VII in such a case as this must file their administrative charges with the EEOC "within three hundred days after the alleged unlawful employment practice occurred...." 42 U.S.C. § 2000e–5(e). *See Avagliano v. Sumitomo Shoji American, Inc.*, 103 F.R.D. 562, 578 (S.D.N.Y.1984). However, if the practice complained of is part of a continuously maintained illegal employment practice, rather than a discrete and isolated act, it

> may be the subject of a valid complaint until a specified number of days after the *last occurence* of that policy. Furthermore, when an illegal policy is so maintained, relief for injuries sustained even before the beginning of the limitations period is appropriate.

*Acha v. Beame*, 570 F.2d 57, 65 (2d Cir. 1978) (citations omitted) (emphasis in the original); *see also Guardians Association v. Civil Service Commission*, 633 F.2d 232, 251 (2d Cir.1980), *aff'd*, 463 U.S. 582, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983); *Association Against Discrimination in Employment, Inc. v. City of Bridgeport*, 647 F.2d 256, 274 (2d Cir.1981), *cert. denied*, 455 U.S. 988, 102 S.Ct. 1611, 71 L.Ed.2d 847 (1982).[5] Furthermore, in a class action, the representative plaintiffs may represent class members who have not themselves filed charges during the applicable limita-

tions period. *Avagliano*, 103 F.R.D. at 577.

Defendants argue without citing any authority that the "continuous violation" doctrine should be limited to discrimination cases involving allegedly discriminatory examinations. (Defendants' Memorandum at 13). However, no language in any of the "continuing violation" cases limits the application of the doctrine to discrimination cases involving examinations. To the contrary, numerous discrimination cases not involving examinations have applied the "continuous violation" doctrine so as to allow the presentation of claims which would otherwise be barred by § 2000e–5(e), when the claims arise from incidents which appear to be part of a continuing policy of discrimination. *See, e.g., Rossini v. Ogilvy & Mather Inc.*, 597 F.Supp. 1120, 1133 n. 16 (S.D.N.Y.1984) (discriminatory hiring and promotion procedures based on subjective evaluations), *rev'd on other grounds*, 798 F.2d 590 (2d Cir.1986); *Avagliano*, 103 F.R.D. at 562 (discriminatory promotions based on subjective criteria); *EEOC v. Sage Realty Corp.*, 87 F.R.D. 365 (S.D.N.Y.1980) (discriminatory working conditions).

■ Ms. Selzer and Ms. Jawin have alleged a continuing violation on the part of the Board of Education. They claim that for at least the last eleven years, defendants' selection procedure for filling supervisory and administrative positions has discriminated against women, and they present evidence indicating that as early as 1973 the Office of Civil Rights concluded as the result of a Title IX violation that "[t]he use of vague and subjective criteria has facilitated the development of a sex discriminatory hiring pattern for principals

---

4. Ms. Selzer and Ms. Jawin both filed their original EEOC complaints on April 21, 1981. (Complaint, Exhibit A).

5. Indeed, a recent Supreme Court decision indicates that defendants could be held liable even for discrimination occurring prior to 1972, if the pre–1972 discrimination continued to the present day:

> a pattern or practice that would have constituted a violation of Title VII, but for the fact that the statute had not yet become effective,

became a violation upon Title VII's effective date, and to the extent an employer continued to engage in that act or practice, he is liable under that statute. While recovery may not be permitted for pre–1972 acts of discrimination, to the extent that this discrimination was perpetuated after 1972, liability may be imposed.

*Bazemore v. Friday*, —— U.S. ——, 106 S.Ct. 3000, 3006, 92 L.Ed.2d 315 (1986).

and assistant principals." (Affidavit of Susan Coyne in Support of Motion for Class Certification, Exhibit J, Office for Civil Rights Findings at 10). As discussed above, Ms. Selzer and Ms. Jawin have also alleged that the Board of Education currently continues to discriminate against women in its high school supervisory and administrative appointments. Hence, "[t]he discriminatory pattern of which plaintiffs complain is by definition fresh since it is alleged to be continuing to this very day." *Kohn v. Royall, Koegel & Wells,* 59 F.R.D. 515, 518 (S.D.N.Y.1973), *appeal dismissed,* 496 F.2d 1094 (2d Cir. 1974).

We disagree, therefore, with defendants' contention that the class must necessarily be limited to women whose claims arose within the three hundred days before Ms. Selzer and Ms. Jawin filed their EEOC complaints.[6]

### B. Future and Deterred Applicants

Plaintiffs have proposed a class which includes all women who may in the future become qualified to apply for high school administrative or supervisory positions and "all women who would have become qualified for those positions but for the chilling effect of defendants' discriminatory practices" (Complaint ¶ 6). It appears unnecessary and inadvisable, however, to certify so broad a class.

There is no need to include future applicants in the class:

> any injunctive relief that might be entered will redound to the benefit of these persons in any event, but certainly no monetary relief can be awarded to them for discrimination not yet inflicted.

*Avagliano,* 103 F.R.D. at 577 (quoting *Williams v. Wallace Silversmiths Inc.,* 75 F.R.D. 633, 636 (D.Conn.1976), *appeal dismissed,* 566 F.2d 364 (2d Cir.1977)). In the circumstances, inclusion of future applicants within the class is not necessary to protect whatever rights they may possess.

The question of inclusion in the class of women allegedly deterred from becoming qualified for promotions by the Board of Education's policies is discussed below in Section III D.

### C. Standing

Defendants contend that Ms. Selzer and Ms. Jawin do not have standing to represent women currently qualified to apply for jobs as principals because neither woman has the two years of supervisory experience required for the position. To have standing as class representatives, plaintiffs must "allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Doe v. Blum,* 729 F.2d 186, 190 n. 4 (2d Cir.1984) (quoting *Warth v. Seldin,* 422 U.S. 490, 502, 95 S.Ct. 2197, 2207, 45 L.Ed.2d 343 (1975)). The named plaintiffs "must possess the same interest and suffer the same injury shared by all members of the class he represents." *Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 216, 94 S.Ct. 2925, 2930, 41 L.Ed.2d 706 (1974).

Defendants contend that since Ms. Selzer and Ms. Jawin currently lack two years of supervisory experience, one of the qualifications for the position of principal, they, like the representative plaintiffs in *East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977), "have suffered no inju-

---

**6.** Defendants also claim that the court does not have subject matter jurisdiction over the Title VII claims of the class because Ms. Selzer's and Ms. Jawin's original EEOC complaints only alleged individual charges of discrimination. This argument has no merit. First, Ms. Selzer and Ms. Jawin amended their EEOC complaints to include class allegations. (Complaint, Exhibit A). Second, in determining the scope of a Title VII charge, courts must

> look not merely to the four corners of the often inarticulately framed charge, but take

into account the "scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Silver v. Mohasco Corp.,* 602 F.2d 1083, 1090 (2d Cir.1979) (citations omitted), *rev'd on other grounds,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980); *Warren v. ITT World Communications, Inc.,* 95 F.R.D. 425, 428 (S.D.N.Y.1982). Here, Ms. Selzer's and Ms. Jawin's original charges of individual discrimination might reasonably have led to a wide investigation.

ry as a result of the allegedly discriminatory practices, and ... therefore [are] simply not eligible to represent a class of persons who did allegedly suffer injury." *Id.* at 403–04, 97 S.Ct. at 1897. In *Rodriguez,* however, the plaintiffs who sought to represent higher-level employees were low-level employees whose poor work records would permanently bar them from the higher level positions in question. *Id.* at 403–04, n. 9, 97 S.Ct. at 1897, n. 9. In contrast, here there is no bar to prevent Ms. Selzer and Ms. Jawin from acquiring the supervisory experience necessary to apply for the position of principal in the future.

Moreover, defendants do not dispute that principals, as well as assistant principals and all other supervisory and administrative personnel in the high school system, are chosen by the procedures set forth in Special Circular No. 30–R. (Answer ¶ 13). Ms. Selzer and Ms. Jawin allege that the selection policies embodied in that guideline have injured them and all other women employed by the Board of Education by discriminatorily denying them the positions for which they are qualified. This allegation that Ms. Selzer and Ms. Jawin have suffered the same general injury suffered by all the class members, including women currently qualified to be principals, is sufficient to confer standing on them to represent all members of the class.

Ms. Selzer and Ms. Jawin also have the same interests as women currently qualified to be principals. Both have demonstrated their eagerness to attain the qualifications necessary to become principals. Ms. Jawin twice applied for and was rejected from high school principal positions prior to the imposition of the two year supervisory experience requirement in 1978. (Affidavit of Ann Juliano Jawin at ¶ 12). Since 1978, both Ms. Selzer and Ms. Jawin have frequently applied for and been denied positions which would give them the supervisory experience currently necessary to apply for principal positions. Clearly they have an interest in eradicating the alleged discriminatory selection procedures for the position of principal.

### D. Conclusion

Plaintiffs' motion for class certification is granted to the extent of including in the class, pending determination of the questions below, those women who, during the period March 24, 1972 to the date the current action is terminated, have been or are qualified for promotion to supervisory or administrative positions within the New York City High School system and the central headquarters of the Division of High Schools or the Board of Education.

Three questions regarding the final definition of the class remain for determination because they have not yet been fully briefed: first, should the class include women allegedly deterred from becoming qualified for the Board of Education positions in question; second, should the class include women no longer employed by the Board of Education, some of whose claims the Board alleges are time barred; and third, what effect, if any, should the time limitations of 42 U.S.C. § 1983 have on the composition of the class.

Because, in addition to any legal issues relating to these questions, these determinations may affect the manageability of the class, as that term is used in Rule 23, these issues are reserved pending a conference of counsel and the court.

It is so ordered.