Dandridge BISHOP and Robert Syphax, on behalf of themselves and all persons similarly situated, Plaintiffs,

v.

NEW YORK CITY DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT, and Abraham Biderman, in his official capacity as Commissioner of the Department of Housing Preservation and Development, Defendants.

No. 89 Civ. 2931 (RPP).

United States District Court, S.D. New York.

March 9, 1992.

Meister Leventhal & Slade by Melvyn R. Leventhal, Marjorie E. Berman, New York City, for plaintiffs.

O. Peter Sherwood, Corp., Counsel of City of New York by Marcia Goffin, New York City, for defendants.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

This is an action for injunctive and declaratory relief and damages brought by two employees of the New York City Department of Housing Preservation and Development ("HPD"). Plaintiffs allege that HPD has discriminated and continues to discriminate against a group of its black employees in HPD's Division of Code Enforcement ("DCE") on the basis of race in violation of the Fourteenth Amendment, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000a *et seq.*, and the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 and 1983. Plaintiffs move pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") for an order certifying this action as a class action. For the reasons set forth below, Plaintiffs' motion is denied.

## BACKGROUND

The Complaint and the affidavits filed in connection with this motion set forth the following.

## I. STRUCTURE OF HPD AND DCE

Defendant HPD is the New York City agency charged with administration and enforcement of the Multiple Dwelling Law, the Housing Maintenance Code, and other housing laws and rules. Defendant Abraham Biderman is the former Commissioner of HPD. HPD is organized into six separate operating divisions: Office of Rent and Housing Maintenance, Office of Development, Office of Management, Office of Administrative Services, Office of Property Management, Office of Legal Affairs, and Office of Inter-governmental Relations. Each division is headed by a Deputy Commissioner.

The Office of Rent and Housing Maintenance is itself subdivided, and one of its units is DCE. DCE is responsible for all inspections of privately owned housing units to insure compliance with all applicable housing laws, rules, and regulations. Currently, DCE employs 354 people in inspectorial capacities, and 384 people in administrative, management, and clerical roles. DCE inspectors are organized in the following levels, from lowest to highest in rank:

Apprentice Housing Inspector

Grade 3 Housing Inspector ("Inspector")

Associate Housing Inspector Level I ("Level I")

Associate Housing Inspector Level II ("Level II")

Deputy Borough Chief Inspector

Borough Chief Inspector

Deputy Chief Inspector for City-wide Operations

Chief Inspector for City-wide Operations

Director of Operations

Assistant Commissioner

The positions above Level II are collectively referred to as "Administrative Positions."

## II. DCE PROMOTIONS SYSTEM

Because HPD is a New York City agency, the New York Civil Service Law applies to its promotions system. *People v. Kearny*, 164 N.Y. 64, 58 N.E. 14 (1900). Accordingly, promotional examinations are administered by the City of New York Department of Personnel in connection with advancement to certain titles within DCE. Promotions are then made from a list of candidates whose exam scores place them on an eligible list. Each eligible list has a duration of one to four years, and once an eligible list is exhausted or expires, a candidate cannot be appointed from that list. When promotions are made from the eligible list, for each vacant position to be filled, DCE is required to select one of three candidates in the order in which they appear on the eligible list. Each candidate who is not initially selected for promotion is entitled to be considered two additional times. Once an employee has been passed over three times, his examination performance does not entitle him to any further consideration.

### A. Level I Promotions

Promotions from Inspector to Level I are based on the "Associate Inspector Exam," administered in accordance with the Civil Service Law. Blacks constitute approximately 60% of the Inspectors and 24% of the Level I's. Affidavit of Marjorie E. Berman, sworn to on February 15, 1991 ("Berman Aff."), Exhs. A, B1.

### B. Level II Promotions

The procedure for promotion to Level II is disputed by the parties. The necessary qualifications for Level I and Level II positions are the same, and an employee is eligible for promotion to either position by passing the Associate Inspector Exam. Plaintiffs allege that in practice promotions to Level II are given primarily to Level I employees, are made without reference to the results of the Associate Inspector Exam, and are made at a supervisor's discretion based on personal evaluations and other subjective criteria.

Defendants, however, assert that promotions from one rank to another within a specific title, such as from Level I to Level II, may be made without an examination. Such promotions are made on the basis of work history, experience, and organizational need. Prior to May 1991, DCE had no written policy regarding promotion to Level II. On May 8, 1991, the DCE Assistant Commissioner issued a memo which "restated" procedures regarding "the posting of job vacancies, promotions, the awarding of meritorious increases, employee transfers, and termination of provisional employees to make way for hiring from civil service lists." Affidavit of Robert Davis, sworn to on January 3, 1992 ("Davis Aff."), Exh. 6.

Currently, blacks constitute 6% of all Level II employees. During the period 1984–1989, the proportion of black Level I's varied from 24% to 28%. During that same period, 11% of the 28 promotions to Level II went to black Level I employees. Berman Aff., Exhs. B1, C1, D1. Plaintiffs state that the proposed class members received neither notice of, nor invitation to apply for those Level II positions, and they argue that the statistics regarding the promotion rate of each racial group at DCE are prima facie evidence of discrimination.

### C. Administrative Positions

Level I and Level II employees are both eligible for promotion to Administrative Positions if such employees pass the written "Administrative Inspector Exam." Plaintiffs assert, however, that in practice such promotions have consistently been drawn from the Level II ranks and thus discriminate against Level I employees, a higher percentage of whom are black. The most recent Administrative Inspector Exam was given in 1984. Thirty-two employees, including two black employees, passed the exam and were placed on the eligible list. Prior to the expiration of that list in 1985, 11 employees were promoted to Administrative Positions, one of whom was black. Plaintiffs assert that after the 1984 exam, two white employees who failed that exam were later promoted to Administrative Positions. Berman Aff., ¶ 4.

The Civil Service Law provides that when there is no eligible list available for filling a vacant competitive position, appointments may be made on a provisional basis. N.Y.Civ. Service L. § 65. Currently, three white employees hold Administrative Positions on a provisional basis.

### D. Promotions Decisionmaking

Promotions decisionmaking at DCE is centralized. From 1984 to 1989, all final promotions decisions were made by six senior level managers, all of whom were white. Berman Aff., Exh. 11B. The Court notes that at oral argument of this motion, Defendants' counsel stated without contradiction that currently the top positions at DCE are occupied by black employees.

### III. PLAINTIFFS' ALLEGATIONS

The proposed representative plaintiffs are Dandridge Bishop and Robert Syphax. Bishop is a black male resident of New York City. He has worked for HPD for 18 years, all but two of which have been spent at DCE. Bishop took the Associate Inspector Exam in 1982, and his score was the 15th highest of the 90 exams administered at that time. Bishop took the Administrative Inspector Exam in 1984, but he did not pass. In April 1984, however, he was promoted to Level I in the Queens office of DCE. Later that year, Bishop was transferred to the Office of the Inspector General, an HPD division separate from DCE. In May 1985, Bishop was promoted to Level II in the Office of the Inspector General.

On February 2, 1986, Bishop was involved in an off-duty altercation with a DCE employee. A report prepared in connection with an ensuing disciplinary action placed blame for the incident on Bishop. The report states in part that Bishop "wrongfully misrepresented the authority and influence of this office." Davis Aff., Exh. 3. As a consequence, Bishop was reassigned to DCE and demoted back to Level I. Bishop states that a "closed investigation" was conducted, that he was never afforded the benefit of a hearing, and that his demotion was based unlawfully on race. Affidavit of Dandridge Bishop, sworn to on February 13, 1991, ¶ 13. He asserts that since 1986 he has been assigned significant responsibility and has performed with merit, but that he has been denied promotion on account of his race.

Plaintiff Robert Syphax has worked at DCE for over 22 years. Sometime in the early 1980s, he was promoted to Level I. In 1984, Syphax took and passed the Administrative Inspector Exam, receiving the fourth highest of the 32 passing scores. Syphax has never been promoted above Level I, and he charges that this failure to promote is based on his race.

Between 1984 and the present, three complaints alleging discrimination against black employees at DCE were filed with HPD's Equal Opportunity Office. Two of these complaints were filed by Bishop and Syphax, and they are the only DCE employees who have filed complaints with either the New York State Division of Human Rights or the Equal Employment Opportunities Commission.

The Complaint here charges that Defendants have discriminated and continue to discriminate on the basis of race against Plaintiffs by adopting, implementing, and pursuing discriminatory policies and practices with respect to: (1) promotions to the positions of Level II and to Administrative Positions, and (2) discipline imposed against employees of DCE.[1] Plaintiffs charge that there is a continuous pattern and practice of intentionally restricting the promotional opportunities of black employees at DCE.

The Complaint seeks the following relief:

(1) an injunction prohibiting the Defendants from: (a) promoting or assigning persons to Level II and administrative positions based on subjective personal

---

1. A letter from Plaintiffs' counsel states that Plaintiffs intend to seek leave to file an amended complaint which deletes those paragraphs of the original complaint alleging claims relating to discipline. Letter of Marjorie Berman, Esq. to Marcia Goffin, Esq., dated February 15, 1991. Accordingly, the proposed class does not encompass DCE employees who may have been discriminated against with regard to disciplinary actions.

evaluations or other discriminatory criteria, (b) discriminating on the basis of race in disciplining DCE employees, and (c) engaging in any other discriminatory practices not yet specifically identifiable;

(2) an order directing the Defendants to implement a non-discriminatory promotion and assignment procedure for Level II and administrative positions which is based on examination scores, years of experience, and other objective criteria;

(3) an order directing the Defendants to promote Bishop and Syphax to the next available Level II or higher administrative position in DCE and to promote the plaintiff class members to such subsequently available positions on a one-for-one basis with non-class members until such time as Defendants' unlawful practices are fully remedied;

(4) a declaration that the acts, omission, practices, and policies of Defendants violated Plaintiffs' rights as secured by the Fourteenth Amendment, the Civil Rights Act of 1866, and the Civil Rights Act of 1964, as amended;

(5) an award of damages that Plaintiffs have suffered as a result of Defendants' unlawful practices, including lost wages, retroactive restoration and/or adjustment of seniority rights and related benefits, and damages for Plaintiffs' humiliation, embarrassment, and mental and emotional distress; and

(6) an award of Plaintiffs' costs and disbursements of this action, including attorneys' fees.

Plaintiffs move for an order certifying the following proposed class of Plaintiffs:

All present, past and future Black Level I employees of the Division of Code Enforcement of the New York City Department of Housing, Preservation and Development, including named plaintiffs, who have been or will be denied pro-

motional opportunities, or otherwise discriminated against upon obtaining promotions, by defendants, on the basis of their race.

## DISCUSSION

### I. RULE 23(a)

"[A] Title VII class action, like any other class action, may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). Rule 23(a) of the Federal Rules of Civil Procedure provides:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.[2]

"In the wake of *Falcon,* courts have been generally strict in their application of the Rule 23(a) criteria." *Rossini v. Ogilvy & Mather, Inc.,* 798 F.2d 590, 597 (2d Cir. 1986). The plaintiff bears the burden of demonstrating that the Rule 23(a) requirements have been fulfilled. *Ross v. Nikko Secur. Co. Int'l, Inc.,* 1990 WL 121678 at *3 1990 U.S. Dist. LEXIS 10476 at *8 (S.D.N.Y. August 10, 1990).

### A. Numerosity

 In deciding whether the class is so numerous that joinder of all members is impracticable, "Courts should not be so rigid as to depend on mere numbers as a guideline on the practicability of joinder; a determination of practicability should depend on all circumstances surrounding a case." *DeMarco v. Edens,* 390 F.2d 836, 845 (2d Cir.1968). *Accord New Castle v. Yonkers Contracting Co.,* 131 F.R.D. 38

---

**2.** The four requirements are generally termed numerosity, commonality, typicality, and ade- quacy-of-representation.

(S.D.N.Y.1990). The factors to be considered in evaluating the practicability of joinder include not only the number of the parties involved, but also the inconvenience of trying individual suits, the nature of the action, the size of the individual claims, and the location of the class members. *Ashe v. Board of Elections*, 124 F.R.D. 45, 47 (E.D.N.Y.1989), *citing* 7A C. Wright, A. Miller and M. Kane, *Federal Practice and Procedure*, § 1762, at 188, 192.

██ Plaintiffs' proposed class contains approximately 32 potential members. In *New Castle, supra,* the Court considered a motion to certify a class of 36 members, a class approximately the same size as the one here. After a review of numerous cases, the Court concluded that district courts in the Second Circuit have not been uniform in construing the numerosity requirement as applied to classes of approximately this size. *New Castle,* 131 F.R.D. at 40. Accordingly, the mere size of Plaintiffs' proposed class does not alone indicate that joinder is either practicable or impracticable.

Plaintiffs do not argue that the inconvenience of trying individual suits, or the size of the potential claims, or the geographic dispersion of the class members makes joinder impracticable. Plaintiffs do, however, argue that the nature of the instant action, a promotions discrimination claim, indicates that joinder is impracticable. In contrast to a claim of discrimination in hiring or termination, in a promotions discrimination claim the proposed class members are current employees of the body whom they are suing. Thus, the threat of employer retaliation or harassment is likely to weigh in an employee's decision whether to come forward and join his individual case. Other courts have held that the existence of such fears is a factor which renders joinder less practicable. *See, e.g., Adames v. Mitsubishi Bank, Ltd.,* 133 F.R.D. 82, 89 (E.D.N.Y.1989); *Frazier v. Southeastern Pennsylvania Transp. Authority,* 123 F.R.D. 195, 197 (E.D.Pa.1988); *Holsey v. Armour & Co.,* 743 F.2d 199 (4th Cir.1984); *Slanina v. William Penn Parking Corp.,* 106 F.R.D. 419, 423–24 (W.D.Pa.1984).

Plaintiffs Bishop and Syphax state that fears of employer retaliation and harassment are well-founded and that other employees do in fact have such fears. Syphax states:

When I first filed a discrimination complaint with the [Equal Opportunity] department at HPD, my union representative, Inspector Williams, told me that Frank Dell'Aria, the Commissioner of Code Enforcement, stated that if I pursued this complaint that I would never receive a promotion from Associate Inspector Level I. Since I first filed this case with EEOC, I have engaged other proposed class members to become actively involved by either being a named representative or by submitting affidavits describing their experiences of race discrimination at DCE as it has affected their opportunities for promotion. Repeatedly, other proposed class members have stated that they fear the employment consequences that will result if they try to fight management.

Supplemental Affidavit of Robert Syphax, sworn to on January 10, 1992, ¶¶ 3–5. Bishop states that management has retaliated against him for filing this lawsuit by reducing his responsibilities, by requiring him to provide verification for a medically related absence when no written policy requires such verification, and by requiring him to sign in and out of work in a separate area from other employees in his unit. He also states, "Other Level I employees tell me they will not get involved [in this lawsuit] because they are afraid that if they antagonize management, they will never get a promotion." Supplemental Affidavit of Dandridge Bishop, sworn to on January 13, 1992, ¶¶ 10–15.

Defendants respond by citing *Sheehan v. Purolator, Inc.,* 103 F.R.D. 641, 650 (E.D.N.Y.1984), *aff'd* 839 F.2d 99 (2d Cir.), *cert. denied* 488 U.S. 891, 109 S.Ct. 226, 102 L.Ed.2d 216 (1988), where the Court stated, "The appropriate mechanism to redress plaintiffs' fears of retaliation is not the certification of class action on the basis of unsubstantiated class claims, but the statutory protection accorded Title VII

claimants under 42 U.S.C. § 2000e–3." In *Sheehan*, the plaintiffs had failed to submit affidavits from employees to "flesh out" inconclusive statistical evidence and thereby show the existence of an aggrieved class of employees who had suffered gender discrimination. 103 F.R.D. at 649. The plaintiffs argued that employees' fears of retaliation should excuse them from submitting such affidavits. The Court noted its concern for employee vulnerability, but held that such concern was outweighed by the policies embodied in Rule 23(a) as interpreted by *Falcon*. *Id.* at 649–50. Thus, contrary to Defendants' arguments, *Sheehan* does not stand for the proposition that fear of employer retaliation cannot be considered in evaluating the practicability of joinder, only that Rule 23(a) requires rigorous analysis.

Secondly, Defendants argue that civil service grievance procedures are adequate to protect the Plaintiffs from termination or other forms of employer retaliation. There is no evidence before the Court that the architects of Title VII intended the availability of civil service remedies to foreclose government employees' access to Title VII relief.

Despite the Plaintiffs' allegations, the Court is uncertain that fears of retaliation or harassment are prevalent among the potential class members. Two other potential class members did not fear retaliation sufficiently to be discouraged from filing affidavits in support of Plaintiffs' motion. The time period covered by Syphax's statement extends back to several years ago. Top management at DCE has been changed, and DCE is now headed by members of the same minority group as that of the potential class members. Under such circumstances, while it is possible that such fears exist and might dissuade potential class members from joining their individual claims, such fears seem less likely to exist. Furthermore, the only evidence before the Court as to the existence of these fears are Bishop's and Syphax's hearsay statements. At oral argument on this motion, Plaintiffs'

counsel stated that she had not attempted to contact other black Level I employees to determine whether they would be willing to join this action, but rather she relied on Bishop's and Syphax's representations that they were not. It is understandable that counsel might have concerns regarding the propriety of approaching the potential class members to solicit their involvement in this lawsuit, and such concerns are prudent. Nevertheless, the Court would prefer stronger evidence upon which to base its decision as to the impracticality of joinder.

Accordingly, the Court directs Plaintiffs' counsel to write to all potential class members [3] within 10 days of the entry of this Opinion and Order, and request each individual to submit a letter addressed to the Court stating whether he or she is willing to join his or her individual claim with those of the Plaintiffs, and, if not, the reason why not. These letters will be reviewed by the Court *in camera*. If the potential class member does not want to join in Plaintiffs' claims, his or her letter will be sealed and not disclosed to HPD, DCE, the named plaintiffs in this lawsuit, or any other third parties unless the author consents to such release. Such letters must be submitted to this Court within 30 days of the entry of this Opinion and Order. The Court will review these letters to determine whether the nature of this action makes joinder impracticable.

**B. Commonality**

■ In *Falcon*, 457 U.S. at 157 n. 13, 102 S.Ct. at 2370 n. 13, the Supreme Court noted:

> The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."

---

**3.** This group consists of all past and present black Level I employees of DCE. The proposed letter to the potential class members shall be submitted to the Court, on notice to Defendants' counsel, within five days of the date of entry of this Opinion and Order.

The "commonality" requirement of Rule 23(a)(2) requires that a plaintiff show the existence of an aggrieved class of plaintiffs by showing that there are questions of law and fact common to the class. As the *Falcon* Court observed:

> Conceptually, there is a wide gap between (a) an individual's claim that he has been denied a promotion on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims. For [the plaintiff] to bridge that gap, he must prove much more than the validity of his own claim.

Defendants argue that the Plaintiffs fail to "bridge that gap," and thereby fail show the existence of an aggrieved class.

Defendants, however, misconstrue the teachings of *Falcon*. There, the Supreme Court rejected the "across-the-board" rule, which permitted "any victim of racial discrimination in employment to maintain an across the board attack on all unequal employment practices alleged to have been committed by the employer pursuant to a policy of racial discrimination." *Falcon*, 457 U.S. at 152, 102 S.Ct. at 2367. The lower courts in *Falcon* had permitted plaintiff, who alleged discrimination on account of national origin with respect to *promotions*, to represent a class of plaintiffs who allegedly suffered discrimination on account of national origin with respect to *hiring*. The Supreme Court held:

> Without any specific presentation identifying the questions of law or fact that were common to the claims of the plaintiff and of the members of the class he sought to represent, it was error for the District Court to presume that respondent's claim was typical of other claims against petitioner by Mexican–American employees and applicants.

*Id.* at 158–59, 102 S.Ct. at 2371–72.

The Second Circuit has observed that "the primary thrust of *Falcon* was that

satisfaction of Rule 23(a) requirements may not be *presumed.*" *Rossini*, 798 F.2d at 597 (emphasis in original). Here, Plaintiffs provide statistical and anecdotal evidence which support the inference that there is an aggrieved class of persons sharing common questions of law and fact. Plaintiffs submit affidavits from the named plaintiffs and two potential class members, all of which support the allegations of discrimination in promotions. These four employees represent 12.5% of the proposed class, a "statistically significant number of aggrieved persons in the putative class in relation to the size of the relevant work force ..." *Ross v. Nikko Secur. Co. Int'l, Inc.*, 133 F.R.D. 96, 97 (S.D.N.Y.1990).

In addition, Plaintiffs' statistics indicate that employees holding Level II positions and Administrative Positions are disproportionately white in relation to the pool of black Level I applicants. Defendants contest neither the validity of these statistics nor the statistical breakdowns by race and position, nor do they offer contrary statistics. Furthermore, the class is narrowly defined to include only black Level I employees of DCE, and Plaintiffs do not move for certification of a class with claims unrelated to those addressed by their anecdotal and statistical evidence. Accordingly, the *Falcon* "gap" is absent here, and Plaintiffs have shown the existence of commonality in the proposed class.

Despite this showing, concerns remain as to whether prosecution of this action as a class action is preferable to joinder of individual claims. Plaintiffs seek not only declaratory and injunctive relief, but also an order requiring DCE to promote Bishop and Syphax to the next available Level II or Administrative Positions, and damages, including back pay. Assuming that a class is certified and that the Plaintiff class is successful on the issue of liability, numerous individual questions relating to damages and relief will remain. In *Cooper v. Federal Reserve Bank*, 467 U.S. 867, 876, 104 S.Ct. 2794, 2799, 81 L.Ed.2d 718 (1984), the Supreme Court observed that in an employment discrimination class action,

"While a finding of a pattern or practice of discrimination itself justifies an award of prospective relief to the class, additional proceedings are ordinarily necessary to determine the scope of individual relief for the members of the class." Such additional proceedings often involve numerous individual factual determinations, and raise concerns about the manageability of the litigation.[4] In such situations, a few courts have avoided potential manageability problems by denying class certification or denying back pay relief.[5] Here, whether or not the liability issues are litigated on a class-wide basis, the remedial issues will require individualized determinations, and the benefits of class certification over joinder are less apparent.

■ Despite these concerns, there is no requirement for Rule 23(b)(2) class actions that common questions predominate over individual questions, or that the class action be superior to other available methods for the fair and efficient adjudication of the controversy. Such predominance and superiority tests apply only to Rule 23(b)(3) class actions. *Penland v. Warren County Jail*, 759 F.2d 524, 531 (6th Cir.1985) (en banc); Fed.R.Civ.P. 23(b) advisory committee's note; Herbert B. Newberg, *Newberg on Class Actions* § 4.11 (1985 & 1991 Supp.). Thus, assuming the other requirements of Rule 23 meet with the Court's approval, neither the existence of individual questions, nor the Court's view that a class action may not be superior to other methods of relief, will defeat class certification.

## C. Typicality

■ The "typicality" requirement of Rule 23(a)(3) requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class. "Rule 23(a)(3) does not require that the factual background of the named plaintiff's case be identical with that of other members of the class, but that the disputed issue occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *Burka v. New York City Transit Authority*, 110 F.R.D. 595, 604–05 (S.D.N.Y.1986). Thus, the typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members. *Avagliano v. Sumitomo Shoji America, Inc.*, 103 F.R.D. 562, 582 (S.D.N.Y.1984). *See also Wagner v. Taylor*, 836 F.2d 578, 591 (D.C.Cir.1987); *De La Fuente v. Stokely Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983); *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562 (8th Cir. 1982); *Newberg on Class Actions* § 24.28. Nevertheless, where there are particularly unique fact patterns, employment circumstances, or defenses with respect to a named plaintiff, the claims of that plaintiff may not be typical of the class, and he or she may be an inappropriate class representative. *See Sheehan*, 103 F.R.D. at 652.

**4.** The Court in *Teamsters v. United States*, 431 U.S. 324, 371–72, 97 S.Ct. 1843, 1872–73, 52 L.Ed.2d 396 (1977), recognized the complex and imprecise nature of calculating back pay damages to which discriminated employees may be entitled:

> The task remaining for the District court on remand will not be a simple one. Initially, the court will have to make a substantial number of individual determinations in deciding which of the minority employees were actual victims of the company's discriminatory practices. After the victims have been identified, the court must, as nearly as possible, recreate the conditions and relationships that would have been had there been no unlawful discrimination ... [T]he court will be required to balance the equities of each minority employees situation in allocating the

limited number of vacancies which were discriminatorily refused to class members.

**5.** *See, e.g., Gray v. International Brotherhood of Electrical Workers*, 73 F.R.D. 638 (D.D.C.1977) (Denying class certification because back pay and damage claims were highly individualized and could not be awarded without making an independent determination of each plaintiff's entitlement to such relief on the basis of a detailed personalized evidentiary treatment); *Society for Individual Rights, Inc. v. Hampton*, 528 F.2d 905 (9th Cir.1975) (In a Rule 23(b)(2) class action challenging the Civil Service Commission's policy of excluding homosexuals, the district court did not abuse its discretion by awarding prospective relief, but denying reinstatement with back pay on the grounds that such relief would be difficult to manage).

### 1. Bishop

■ The Court has concerns as to the typicality of the claims of Plaintiff Bishop, and, accordingly, as to his ability to adequately represent the proposed class.[6] Bishop's claim is typical of other members of the proposed class in that he is a black Level I employee who has been denied promotion to Level II and to an Administrative Position within DCE. His situation is not typical of other class members in that he received a promotion to Level II in a different HPD division, and subsequently he was demoted from that position for misconduct. It is likely that Defendants would raise his demotion as a defense to his claims of discriminatory non-promotion, and this defense would not be typical of those available with respect to other class members.[7] There is a substantial risk that if Bishop were a named plaintiff, his unique employment history would hinder the interests of the class. Implicit in Rule 23 is an obligation for the court to safeguard the interests of class members. In light of that obligation, the Court declines to certify the class with Bishop as a representative plaintiff.

### 2. Syphax

Plaintiff Syphax appears to satisfy the typicality requirement. He is a black Level I employee who has not been promoted to Level II or to an Administrative Position. Syphax and one other black employee took and passed the Administrative Inspector Exam in 1984. While the other employee was promoted to an Administrative Position, Syphax was passed over for promotion three times. Defendants argue that because Syphax is the only potential class member who passed the Administrative Inspector Exam, he was the only potential class member ever eligible for promotion above Level II, and his claims are not typical of the class. This argument ignores Plaintiffs' contention that white employees who never passed the Administrative Inspector Exam were promoted to Administrative Positions. If passing the examination was not a prerequisite to promotion to an Administrative Position, then not just Syphax, but all members of the proposed class were eligible for such promotion. Accordingly, Syphax is not the only potential class member eligible for promotion to an Administrative Position.[8]

■ Defendants also assert that because the other black employee who took and passed the 1984 Administrative Inspector Exam was promoted, Syphax's discrimination claim is somehow less viable. This evidence might be a defense to the charges of discrimination. It is not, however, a defense somehow unique to Syphax which makes his claim atypical of those of the proposed class members. Thus, there having been no showing that any unique defenses or atypical circumstances apply to Syphax, he is an appropriate class representative.

---

6. The adequacy-of-representation requirement also tends to merge with the requirements of commonality and typicality. *Falcon,* 457 U.S. at 157 n. 13, 102 S.Ct. at 2370 n. 13.

7. Bishop states that after his demotion, he has been assigned significant responsibility, and that his job performance led his supervisor to recommend him for promotion to Level II. Bishop alleges that despite this recommendation, he has been denied promotion on account of race, and that management has retaliated against him by reducing his responsibilities. Supplemental Affidavit of Dandridge Bishop, sworn to on January 13, 1992, ¶ 10–11; Supplemental Affidavit of Marjorie Berman, sworn to on January 13, 1992, Exh. 3. If Bishop proved these allegations, he might rebut defenses raised against him.

8. Even if Syphax were the only member of the proposed class who was eligible for promotion to an Administrative Position, the fact that he is more qualified for promotion than other members of the class would not necessarily prevent a finding of typicality.

In *Wagner, supra,* the Court held that plaintiff's status as a "successful attorney" in an elite unit, and hence not a "typical" employee, did not "necessarily establish that his claims of promotional discrimination are atypical of those of the class." 836 F.2d at 590–91. The Court ruled that the district court "must consider whether [the plaintiff] suffered injury from a specific discriminatory promotional practice of the employer in the same manner that the members of the proposed class did, and whether [the plaintiff] and the class members were injured in the same fashion by a general policy of discrimination." *Id.*

### D. Adequacy–Of–Representation

In *Falcon*, the Supreme Court observed that the typicality and commonality requirements not only merge as between themselves, but "also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest." 457 U.S. at 157 n. 13, 102 S.Ct. at 2370 n. 13. Defendants do not challenge the adequacy of the proposed class counsel. Nor have they set forth any evidence that to show that either named plaintiff would have interests which would conflict with those of the proposed class members. *Avagliano*, 103 F.R.D. at 583. Accordingly, for the reasons stated above, the Court concludes that Syphax is an adequate class representative, but that Bishop is not.

### II. RULE 23(B)

To maintain a class action under Rule 23, not only must all of the conditions of Rule 23(a) be met, but also one of the standards of Rule 23(b) must be satisfied. Plaintiffs seek certification under Rule 23(b)(2), which provides:

> the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole ...

Cases involving "actions in the civil rights field where a party is charged with discriminating unlawfully against a class" are particularly well suited to certification under Rule 23(b)(2). *Selzer v. Bd. of Education*, 112 F.R.D. 176, 180 (S.D.N.Y.1986). *Accord* Fed.R.Civ.P. 23(b)(2) advisory committee's note.

 Plaintiffs allege that Defendants have discriminated and continue to discriminate on the basis of race by adopting, implementing, and pursuing discriminatory policies and practices with respect to promotion. They seek injunctive and corresponding declaratory relief which places them within the parameters of subsection (b)(2). That they seek damages in addition to such equitable relief does not prevent certification of this class under this subsection. *Ventura v. New York City Health*

*and Hospitals Corp.*, 125 F.R.D. 595, 601 (S.D.N.Y.1989); *Avagliano*, 103 F.R.D. at 584.

 Defendants argue in light of *Galvan v. Levine*, 490 F.2d 1255 (2d Cir.), *cert. denied* 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1973), that Plaintiffs have failed to show that certification of a class action is "necessary." In *Galvan*, the plaintiffs challenged the constitutionality of a section of New York's Labor Law. The State had "made clear that it understands the judgment to bind it with respect to all claimants; indeed even before entry of the judgment, it withdrew the challenged policy even more fully than the Court ultimately directed and stated that it did not intend to reinstate the policy." On those facts, where "the judgment runs to the benefit not only of the named plaintiffs, but of all others similarly situated," the court upheld the district court's denial of class certification. *Galvan*, 490 F.2d at 1261. Importantly, the *Galvan* Court stated, albeit in *dictum:*

> But insofar as the relief is prohibitory, an action seeking declaratory or injunctive relief against state officials on the ground of unconstitutionality of a statute or administrative practice is the archetype of one where class action designation is largely a formality, at least for plaintiffs.

Defendants argue that the situation here, like that in *Galvan*, is one where class certification is a mere "formality," and that because the potential class is comprised of readily identifiable members, and because Defendants are not "unwilling to apply any injunctive relief to future claimants," certification has not been shown to be necessary. Def.Mem. at 26.

The factual situation here is distinct from that in *Galvan*, and Plaintiffs need not show some extra element of necessity for class certification. Plaintiffs seek not only injunctive or declaratory relief, but also affirmative relief and damages. Courts have held explicitly that *Galvan* does not apply to such situations. *Jane B. v. New York City Department of Social Services*, 117 F.R.D. 64, 72 (S.D.N.Y.1987). *See also Davis v. Smith*, 607 F.2d 535, 540 (2d Cir.1978) ("Where retroactive monetary

relief is not at issue and the prospective benefits of declaratory and injunctive relief will benefit all members of a proposed class ... a district court may decline certification). Although Defendants promise to "apply any system-wide relief to all persons asserting similar claims," Davis Aff. ¶ 42, that promise falls far short of the situation in *Galvan,* where the State had voluntarily taken concrete steps toward redressing the complained of harms. Here, Defendants neither commit themselves to granting any individual relief, nor do they admit the commonality of the class members claims. It is plainly inconsistent for Defendants to argue that any relief granted in connection with this action will be applied to benefit every member of the class, while at the same time they contest the existence of commonality and typicality.

Accordingly, Plaintiffs need not show any special necessity for class certification, and the requirement of Rule 23(b) is met.

### CONCLUSION

For the reasons stated above, the motion for class certification is denied without prejudice, and leave is granted to reopen this motion upon compliance with the Court's directions as set forth above.

IT IS SO ORDERED.