**Fernando MOLINA, et al., Plaintiffs,**

v.

**The MALLAH ORGANIZATION, INC., et al., Defendants.**

**No. 91 CIV 1575 (WK).**

United States District Court, S.D. New York.

Sept. 25, 1992.

Celia Goldwag Barenholtz and Alan Levine, Kronish, Lieb, Weiner & Hellman, New York City, for plaintiffs.

Bettina B. Plevan, Proskauer Rose Goetz & Mendelsohn, New York City, for defendants Mallah Organization, et al, Carryl Mallah, Sheldon Mallah, and Joel Mallah.

S. David Harrison, Lesser & Harrison, New York City, for Rapid Park.

David F. Jasinski, Jasinski and Bisceglie, Newark, N.J., for Rapid Park Industries, Inc., et al, Elizabeth Parking Co., Kevin Wolfe, and Raymond Wolfe.

Neal Platt, Shwal & Platt, New York City, for Manhattan Parking, et al.

James LaRossa, LaRossa Mitchell & Ross, New York City, for Martin Meyers, Mack Parking, Carole Storage Corp., and Manhattan Parking Systems Corp.

Richard H. Maidman, New York City, for Samuel Lipman.

Elizer Cohen, New York City, for Manhattan Parking E. 12th Street Corp.

Brian D. Sullivan, Lord Day & Lord, and Barret Smith, New York City, for nominal defendants Mac Victor, Simon Rogove, Bernard Ratshin, Daniel Stark, Milton Lewin, Brad Shey, and Norman Goodfarb.

Fred S. Sommer, Arent Fox Kintner Plotkin & Kahn, Washington, D.C. and C. Stephen Heard, Jr., McGarrahan & Heard, New York City, for intervenor Metropolitan Garage Owners Ass'n, Inc.

## OPINION AND ORDER

WHITMAN KNAPP, Senior District Judge.

We first addressed the instant lawsuit in a March 5, 1992 Opinion and Order [hereinafter the "Opinion"] 804 F.Supp. 504 in which we sustained three of the four counts plaintiffs had asserted against defendants under ERISA, 29 U.S.C. §§ 1145, 1132(g)(2), and 1140 and the Labor Management Relations Act, 29 U.S.C. § 185(a). Plaintiff now moves for class certification pursuant to Fed.Rule Civ.Pro. 23 with respect to its direct claim (Count IV of the complaint) under ERISA § 510, 29 U.S.C. § 1140,[1] which alleges that defendants in-

---

1. That section provides:
 It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, ... or [§ 185 et seq.], or for the purpose of interfering with the attain-

tentionally interfered with plaintiffs' protected rights under the Local 272 Welfare and Pension Funds ("the Funds").

## BACKGROUND

Familiarity with the Opinion is assumed, but we shall briefly describe the several parties. Plaintiffs are parking garage employees who now work or have previously worked for facilities owned and operated by the defendant parking garages. These defendants consist of the former or present employers of plaintiffs, including parking garages owned and operated by the Mallah, Rapid Park, and Manhattan Parking garage chains, and some of their shareholders, officers, and/or agents. The "Nominal defendants" are five present and two former employer trustees of the Funds. There are also two individual defendants, Samuel Lipman and Manhattan Parking East 12th Street Corp., whose particular characteristics are not specified in the complaint.[2]

The § 510 claim (count IV) with respect to which plaintiffs seek class certification addresses the particular direct harms suffered by plaintiffs and similarly situated persons caused by defendants' alleged scheme to defraud the Funds by not causing allegedly covered employees to join the union, as required by the collective bargaining agreement, nor reporting them or making contributions on their behalf to the Funds.[3] Defendant parking garages [hereinafter the "defendants"] allegedly used a variety of means to implement the scheme, which plaintiffs claim cost the Funds more than $6.7 million, and which we described in the Opinion (at p. 507) as including, in part:

hiding the existence of the Union, actively discouraging union membership when employees became aware of it, implicitly and explicitly threatening discharge should employees attempt to join the Union, concealing from the Union and from the Funds' auditors the existence of those employees whom defendants sought to exclude from union membership by transferring them from one garage to another, and paying these hidden employees through a "web" of corporate entities, actually (in at least one case) paying an employee's medical expenses to discourage his joining the Union. They also threatened to retaliate against any employees who assisted Union delegates in this action.

In denying defendants' motions to dismiss this claim, we observed (at p. 511) that "[t]here can have been no conceivable purpose in defendants' [alleged] activities ... except an intent to interfere with [plaintiffs'] rights under the plans."

Plaintiffs have identified a class of persons consisting of more than 500 covered employees of defendants for whom contributions to the Funds were not made prior to the February 6, 1989 collective bargaining agreement by which such persons could then join the Union as covered "B" employees, and members of those employees' families who, had the required contributions been made, would also have been beneficiaries of the Funds. Plaintiffs also seek certification of three sub-classes consisting of class members who were (or are) employed by the Mallah (at least 300 members), Rapid Park (at least 90 members), and Manhattan Parking (at least 100 members) parking garage chain defendants.

## DISCUSSION

Fed.Rule Civ.Pro. 23(a) sets forth the "Prerequisites to a Class Action," allowing

---

2. Additionally, the Metropolitan Garage Owners Association ("MGOA"), which is the collective bargaining agent for garages that belong to it, has intervened in the action.

3. This claim addresses damage distinct from that alleged by plaintiffs' derivative claims, which look to the harm the scheme caused the Funds.

ment of any right to which such participant may become entitled under the plan, this subchapter, or [§ 185 et seq.]. It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information ... or is about to testify in any inquiry or proceeding relating to this chapter or [§ 185 et seq.] The provisions of [§ 502] shall be applicable in the enforcement of this section.

a class representative to sue on behalf of a class:

> only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims . . . of the representative parties are typical of the claims . . . of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Additionally, to maintain a class action plaintiffs must satisfy the requirements of Rule 23(b)(3),[4] which requires a finding by the court that:

> questions of law or fact common to the members of the class predominate over any questions affecting on individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Defendants do not dispute that plaintiffs have satisfied the numerosity and fair and adequate representation requirements of 23(a)(1) and (4), and, having considered the submissions before us, we too conclude that those prerequisites have been met.[5] We must decide whether: there exist common questions of law or fact as required by 23(a)(2); these questions predominate as demanded by 23(b)(3); plaintiffs' claims are typical of the class; and whether a class action is the superior method of adjudication.

Plaintiffs urge that the existence or not of a scheme by defendants to prevent plaintiffs from attaining their rights under the Funds is the question of law or fact common to each purported member of the class, and that the claims plaintiffs—the proposed class representatives—assert resulted from this scheme are typical of the class. Defendants offer two arguments in opposition. First, they contend that the existence of a threshold question that must be answered individually for each class member—whether or not he or she was indeed engaged in "covered" employment—precludes our concluding that there exist common or typical claims. And second, although plaintiffs have alleged a variety of methods purported to have been utilized by the defendant employers in carrying out the scheme, these allegations are unique to each plaintiff and each defendant. Defendants suggest that this failure to allege a specific interference that applies to all members of the class also destroys the possibility of common or typical claims. And, of course, these two defects would necessarily prohibit a finding that such claims predominate.

We find these contentions unavailing. Regarding defendants' first argument, we have already observed in our earlier Opinion (at n. 12) that "we can[not] conclude on the basis of the 1989 collective agreement that, *inter alia*, created a class of 'B' 'cov-

---

**4.** We consider only 23(b)(3) because we agree with defendants that plaintiffs have failed to make the requisite showing under 23(b)(1) and (2). Plaintiffs argue that a class action is the preferable method of pursuing the class's alleged claims because, in part, it is so unlikely that the members of the class will bring individual suits. Thus 23(b)(1), which is predicated on the prosecution of separate actions, is not met. As to 23(b)(2), the class's prayed-for remedy with respect to the § 510 claim for which certification is sought is money damages and not injunctive or declaratory relief.

**5.** With respect to the 23(a)(1) numerosity requirement, see *Tedesco v. Mishkin* (S.D.N.Y. 1988) 689 F.Supp. 1327, 1333 (class of 200 plus "amply satisfies" numerosity requirement).

Regarding the 23(a)(4) adequacy of representation requirement, we look to two factors: (1) that class counsel is qualified and experienced; and (2) that the proposed named representatives do not have interests adverse to the class. Addressing these factors in reverse order, we are satisfied, and defendants have in no way suggested otherwise, that no plaintiff has an interest antagonistic to the class. Regarding the first factor, we observe that defendants initially opposed the motion with contentions that plaintiffs' counsel suffered from both a conflict of interest created by its simultaneous representation of plaintiffs, the Local 272 Union, and the Union Trustees, and from an apparent lack of experience with class action lawsuits. We disposed of these contentions in the Opinion (at p. 513), noting plaintiffs' counsel's "intimate knowledge of the facts and law pertaining to plaintiffs' claims and its very competent representation of them thus far." Defendants having since raised no further opposition on these lines, we assume that (without waiving their right to raise the question in any appellate proceeding) they no longer wish to argue about plaintiffs' satisfaction of 23(a)(4).

ered employees,' that these same workers were not 'covered employees' before the agreement took force." In other words, it then appeared—and still appears—to us that having agreed to create the "B" employees, all of whom are covered and all of whom we understand to be members of the proposed class, defendants cannot now argue that these same employees were not engaged in covered employment before becoming "B" employees.

 Turning to defendants' second argument, we note in the 23(a)(2) commonality context that "[n]ot every question of fact or law need be common to every member of the class," *Tedesco* 689 F.Supp. at 1334. *See also Dura–Bilt Corp. v. Chase Manhattan* (S.D.N.Y.1981) 89 F.R.D. 87, 93 ("Rule 23(a)(2) requires only that questions of law or fact be shared by the prospective class"). So long as there exist common questions of law or fact, the possibility of questions of fact relevant only to individual class members does not forbid class certification. We believe that the alleged scheme on the part of defendants is a course of conduct, and raises questions of law and fact, common to the entire class. That we may at some point be faced with questions of damages requiring individualized proof or hearings does not make the question of liability any less common to the class. *See Tedesco*, 689 F.Supp. at 1335 (in securities fraud case, existence of individual questions on "reliance and damages" did not undermine the class (citing *Green v. Wolf Corp.* (2d Cir.1968) 406 F.2d 291, 301)). *See also Dura–Bilt*, 89 F.R.D. at 98.

 In a similar vein, typicality for 23(a)(3) is determined on the basis of whether the claim of a class representative "arises from the same ... course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory," *Dura–Bilt*, 89 F.R.D. at 99. Again, we conclude that this prerequisite is satisfied by the defendants' alleged scheme to prevent plaintiffs from attaining rights under the Funds, as the scheme is the basis of plaintiffs' § 510 claim and does indeed "arise from the same ... course of conduct by the defendant, and [is] based on the same legal theory, as the claims of the class members." *McClendon v. Continental Group, Inc.* (D.N.J.1986) 113 F.R.D. 39, 42. And "[b]ecause this inquiry focuses on the nature of the claims asserted, factual differences ... will not destroy typicality if each class member was the victim of the same ... consistent course of conduct." *In re Baldwin–United Corp. Litigation* (S.D.N.Y. 1986) 122 F.R.D. 424, 428.

Just as 23(a)(2) does not require that all questions of law of fact be common, 23(b)(3) only requires that such questions predominate over individual ones. In this regard, our concern is that the liability question—that is, the existence or not of defendants' scheme—be common to the class. Having so concluded, we hold that common questions predominate over individual questions. *See Dura–Bilt*, 89 F.R.D. at 93, 98 ("Courts generally focus on the liability issue in deciding whether the predominance issue is met"). Finally, the relatively small monetary damages suffered by individual plaintiffs and the improbability that they would be willing singly to sue their employers makes a class action about the only feasible method of prosecuting their claims.[6]

## CONCLUSION

Plaintiffs' motion for class certification is granted. However, we are not at this point in the litigation persuaded that plaintiffs'

---

6. We are directed to consider in arriving at the required 23(b)(3) findings:
 (A) the interest in member of the class in individually controlling ... separate actions; (B) the extent ... of any litigation ... already commence ...; (C) the desirability ... of concentrating the litigation ... in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

We believe that (C) and (D) are both clearly satisfied in the present case, and (A) and (B) both answered in the affirmative by the observation immediately preceding this note. *See also Dura–Bilt*, 89 F.R.D. at 103 ("A Rule 23(b)(3) action clearly is superior where large numbers of persons, who may be unaware of the existence of a cause of action, are involved and where most of their claims are too small to warrant individual suits.").

fear[7] that each of the three groups of employers were moved by a different intent to engage in the alleged scheme and utilized different operating procedures in carrying it out warrants present division of the class into sub-classes pursuant to Rule 23(c)(4)(B). We therefore decline so to certify such sub-classes without prejudice to plaintiffs' renewing their application should further discovery convince them that such division is necessary. Plaintiffs are directed to submit on ten days notice a proposal to satisfy the notification and opt-out requirement of 23(c)(2).

SO ORDERED.

---

**7.** Which it expressed in footnote 2 on page 5–6 of its Memorandum of Law in Support of the motion.