See also 163 F.R.D. 446.

Evelyn KRUEGER, Francis J. Lupardo, Carlyle D. Forde, Walter Grabowski, Nicholas T. Bruck, and Albert J. Dwyer on behalf of themselves and all others similarly situated, Plaintiffs,

v.

NEW YORK TELEPHONE COMPANY and NYNEX Corporation, Defendants.

Bernice CARROLL, Betsy J. Bell and William F. Perkins, individually and on behalf of all other persons similarly situated, Plaintiffs,

v.

NEW YORK TELEPHONE COMPANY, a Company of the NYNEX Corporation, Defendants.

Nos. 93 Civ. 0178 (JGK), 93 Civ. 0179 (JGK).

United States District Court, S.D. New York.

Sept. 22, 1995.

Julian Birnbaum, Suja Thomas, Vladeck, Waldman, Elias & Engelhard, P.C., New York City, for Plaintiffs in Krueger, et al.

Leonard N. Flamm, Law Offices of Leonard N. Flamm, New York City, for Plaintiffs in Carroll, et al.

Amy Beech, Matthew Miklave, Epstein, Becker & Green, New York City, for Defendants NYNEX and New York Telephone.

## OPINION AND ORDER

KOELTL, District Judge.

These cases are brought by two plaintiff groups (the *Krueger* plaintiffs and the *Carroll* plaintiffs) claiming age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA") and the New York Human Rights Law, Executive Law § 290 *et seq.* (the "HRL"). Additionally, the *Krueger* plaintiffs assert claims for unlawful interference with pension rights under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"). The *Krueger* plaintiffs seek to (i) certify a class action pursuant to Fed. R.Civ.P. 23 with respect to both the state HRL and ERISA claims, and (ii) authorize a collective action with respect to the ADEA claims pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b) (the "FSLA") as provided in § 626(b) of ADEA. The *Carroll* plaintiffs seek only to proceed as a collective action with respect to their ADEA claims.[1]

1. The Carroll plaintiffs originally included in their papers a motion that the Court take supplemental jurisdiction over the state HRL claims on behalf of the five unnamed members of their collective ADEA action who have filed opt-in consents. At oral argument, counsel withdrew this part of the motion, electing instead to have these unnamed plaintiffs intervene in order to bring their state HRL claims before the Court. Consequently, the motion for the Court to exercise supplemental jurisdiction over those claims is withdrawn and those opt-in plaintiffs are

For the reasons that follow, the Court grants the motions.

## I.

Between October 13, 1992 and December 11, 1992, the New York Telephone Company decided to implement a reduction in force (the "Fall 1992 RIF") of some 600 management employees. The Fall 1992 RIF was implemented in accordance with an approach described in the Force Management Plan (the "FMP"), a plan designed by NYT's parent, NYNEX Corp. The FMP provided procedures and guidelines [2] under which individual NYNEX business units would effectuate workforce reductions. The basic procedure involved the creation of "banding entities" or "bands" comprised of employees sharing certain characteristics, such as salary level, job function and geographic location. Under the FMP, employees within each band were to be evaluated by teams of NYT supervisors on the basis of two categories, "Added Value" (further categorized as "knowledge, skills, investment and potential") and "Performance." Once evaluated, employees were rated as "Maximum, High, Medium, or Low" and ordered by seniority within each rating. The least senior employee with a Low rating was first eligible to be placed "at risk," and more senior employees with Low ratings would follow. (See Davies Aff. dated Apr. 30, 1993, ¶¶ 4–12.)

For the Fall 1992 RIF, NYT created sixty-nine separate banding entities consisting of employees from twelve departments as well as all Division and District Managers and Secretaries. After employees were banded and evaluated and ranked, approximately 600 employees were placed at risk. About 100 of these employees accepted other jobs at NYT or other NYNEX companies. Approximately 200 employees, many of whom were never

granted leave to intervene in the *Carroll* action to assert claims under the HRL.

**2.** The parties describe the FMP differently. Plaintiffs describe it as a "process," while defendants call it a "protocol." For the issues before it, the Court need not determine all the contours of the FMP. It is enough that the actions that plaintiffs challenge as discriminatory were taken pursuant to common aspects of the Fall 1992 RIF.

at risk, separated voluntarily from NYT. Approximately 271 employees were discharged involuntarily on December 11, 1992. (*See* Davies Aff. ¶¶ 13–15.) Among these were the *Krueger* plaintiffs, the *Carroll* plaintiffs, and the employees who have signed consents to participate in their respective ADEA collective actions. (Vladeck Aff. dated Jan. 11, 1995 ¶ 5, Ex. A; Compl. ¶¶ 4–9, 16.)

The plaintiffs' lawsuits are based in part on several specific provisions of the Fall 1992 RIF.[3] First, NYT excluded from the banding process at the outset employees who had either (i) been hired within two years of the RIF; or (ii) received a promotion within the past year. (*See* Compl. ¶ 27; Bruck Aff. dated Oct. 21, 1994, Ex. B; Davies Dep. dated June 16, 1994 at 153–54.) Second, evaluations of banded employees included in general as a component of "Added Value" whether the employee had been awarded an academic degree within the past two years. (Davies Dep. at 474–75.) The application of these provisions forms the basis of the *Krueger* and *Carroll* plaintiffs' ADEA claims under a disparate impact theory and their claims under New York's Human Rights Law. Additionally, the *Krueger* and *Carroll* plaintiffs assert ADEA claims under a disparate treatment theory based on the allegedly discriminatory way in which NYT and NYNEX managers executed the FMP and the plaintiffs point to numerous allegedly discriminatory remarks by management employees. The *Krueger* plaintiffs' ERISA claims are also based on the implementation of the FMP and the alleged plan to interfere with plaintiffs' attainment of their service pension and other pension benefits to which they would have become entitled.

**3.** Plaintiffs assert these provisions were part of the FMP and applied to each of the banding entities. (Compl. ¶ 2.) Defendants insist that distinctive selection and evaluation criteria were applied for each band and that the FMP was merely a loose set of guidelines. (Davies Aff. ¶ 4.) Defendants do not, however, deny the existence of the provisions forming the basis of plaintiffs' claims.

## II.

■ The *Krueger* plaintiffs seek to certify a class action with respect to both the HRL claims and the ERISA claims pursuant to Rule 23 of the Federal Rules of Civil Procedure. Rule 23(a) sets out the requirements for certification:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The party seeking to certify a class, here the *Krueger* plaintiffs, bears the burden of demonstrating each of the four elements, *Bishop v. New York City Dep't of Hous. Preservation and Dev.*, 141 F.R.D. 229, 234 (S.D.N.Y. 1992), and the Court must be "satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). If the Court is satisfied that each of the four elements have been met, and that the class is maintainable pursuant to one of the subdivisions of Fed.R.Civ.P. 23(b), the Court may, in its discretion, certify the class. *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 290 (2nd Cir.1992). Class certification, however, is not an occasion for examination of the merits of the case. The Court should not resolve any material factual disputes in the process of determining whether plaintiffs have provided a reasonable basis for their assertions. *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 570–72 (2d Cir.), *cert. denied*, 459 U.S. 838, 103 S.Ct. 86, 74 L.Ed.2d 80 (1982); *Meyer v. Macmillan Publishing Co.*, 95 F.R.D. 411, 414 (S.D.N.Y.1982). Permitting a class certification proceeding to become a mini-trial on the merits is both unauthorized and unwise, as explained by the Supreme Court:

> We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action. Indeed, such a procedure contravenes the Rule by allowing a representative plaintiff to secure the benefits of a class action without first satisfying the requirements for it. He is thereby allowed to obtain a determination on the merits of the claims advanced on behalf of the class without any assurance that a class action may be maintained. This procedure is directly contrary to the command of subdivision (c)(1) that the court determine whether a suit denominated a class action may be maintained as such '[a]s soon as practicable after the commencement of [the] action. . . .' In short, we agree with Judge Wisdom's conclusion in *Miller v. Mackey International*, 452 F.2d 424 (CA5 1971), where the court rejected a preliminary inquiry into the merits of a proposed class action:
>
> > 'In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.' Id. at 427.
>
> Additionally, we might note that a preliminary determination of the merits may result in substantial prejudice to a defendant, since of necessity it is not accompanied by the traditional rules and procedures applicable to civil trials. The court's tentative findings, made in the absence of established safeguards, may color the subsequent proceedings and place an unfair burden on the defendant.

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974). The issue here is whether, based upon the pleadings and the extensive evidentiary record before the Court, including the affidavits and the results of substantial discovery, the plaintiffs have carried their burden of showing that each of the requirements of Rule 23(a) have been met and that the action is maintainable under one of the subdivisions of Rule 23(b).

### A. *The Class Action Rule 23 Requirements:*

#### 1. *Numerosity*

■ The *Krueger* plaintiffs seek to certify a class of "all former New York Telephone

employees age 40 and older who in violation of the HRL were discharged in the FMP because of their age and who have given their written consent to being part of the ADEA collective action." (the "HRL class") (Vladeck Aff. ¶ 9; Compl. ¶ 17.) Plaintiffs allege a class of at least 157 persons. (Vladeck Aff. ¶ 5.)[4] The *Krueger* plaintiffs also seek to certify a class of "the named plaintiffs and all other *former NYT employees who were, or would have become eligible for defendants' service pension or other additional pension benefits but who were discharged under the FMP in order to interfere with their attainment of service pension benefits or additional pension benefits.*" (the "ERISA class") (Vladeck Aff. ¶ 10; Compl. ¶ 18.) This class is also limited to those who have filed consents to join the ADEA claims and is comprised of the same potential class members as the HRL class. (Vladeck Aff. ¶ 10.)

Because of the large number of potential class members and the obvious inefficiencies of trying 157 lawsuits individually, and given that defendants do not oppose certification of either of the two classes on such grounds, the Court finds the classes sufficiently large to satisfy the Rule 23(a) numerosity requirement. *See Town of New Castle v. Yonkers Contracting Co., Inc.*, 131 F.R.D. 38, 40 (S.D.N.Y.1990) (generally excess of 40 plaintiffs satisfies numerosity requirement); *Korn v. Franchard Corp.*, 456 F.2d 1206, 1209 (2d Cir.1972) (70 plaintiffs is sufficient).

### 2. Commonality

 The commonality component of Rule 23(a) requires that plaintiffs show there are questions of law or fact common to the aggrieved class. *Bishop*, 141 F.R.D. at 237. "Commonality does not mandate that all class members make identical claims and arguments," *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198 (S.D.N.Y.1992), only that "the gravamen of the Complaint is that defendants discriminated against class members in the same general fashion." *Open Hous. Ctr., Inc. v. Samson Management Corp.*, 152 F.R.D. 472, 476 (S.D.N.Y.1993). The mere presence of some asserted factual differences between class members is not a

bar to commonality. *Id.* 152 F.R.D. at 476; *Trief,* 144 F.R.D. at 198.

#### a. The HRL Class

 Plaintiffs argue that two aspects of the HRL claims satisfy the commonality element. First, the HRL class members make a disparate impact claim that the FMP was a single, company-wide plan applied to them in a way that affected them more harshly than NYT employees younger than 40. The following allegations are made. The FMP was formulated and implemented by NYNEX, the parent company of NYT. (Compl. ¶ 24.) Provisions of the FMP were designed by high-level officials and applied to all NYT employees. (*Id.* ¶ 25.) The FMP provided the conditions for determining which departments within NYT were to be banded and which employees would be placed "at risk" of termination within those banding entities. Specifically, plaintiffs point to the provisions exempting new hires and promotees, (*Id.* ¶¶ 31–32), and the provision affording preferential credit for recent recipients of academic degrees. (*Id.* ¶¶ 33–34.) Plaintiffs maintain that these provisions had a discriminatory impact on older employees. Because the provisions were part of the FMP, and because the FMP was applied across all banding entities, each potential class member was impacted by the provisions. (*Id.* ¶ 35.)

In support of the disparate impact claims, plaintiffs submit the affidavit of Dr. Janice Fanning Madden, a professor at the University of Pennsylvania and a specialist in labor economics and statistics. (*See* Madden Aff. dated Aug. 29, 1994, ¶ 1.) Dr. Madden performed an analysis of the effect of the FMP on NYT management employees. Dr. Madden concluded that workers over age 40 "experienced a statistically significant greater probability of being put at risk of layoff and of being involuntarily terminated than younger workers in the same banding entity." (*Id.* ¶¶ 4, 16, Tables.) According to the study, the probability of being put at risk was 16.7% for employees 40 and over, 24.8% for employees 55 and over, and 11.1% for employees under 40. (*Id.* Table 3.) Dr.

---

4. At oral argument, plaintiffs indicated that the size of the class appeared to be 162.

Madden also concluded under various conditions that, had an age neutral selection processes been used, fewer workers over age 40 would have been placed at risk. (*Id.* ¶¶ 4, 11, Tables.) Dr. Madden determined that nearly 18% of workers under age 40 were excluded from being placed at risk because of the new hire/promotion rule, while only 0.9% of employees over 40 were so excluded. (*Id.* ¶ 14, Table 4.) Dr. Madden also supports plaintiffs' allegation that employees approaching pension eligibility were disproportionately affected by the FMP. (*Id.* ¶ 15, Table 5.)

The second common question plaintiffs advance with respect to the HRL class is the claim of disparate treatment in that older NYT employees were intentionally treated less favorably than younger employees throughout the company during the implementation of the FMP. Plaintiffs cite numerous examples of widespread age bias among NYT managers responsible for executing the FMP. It follows, plaintiffs maintain, that class members share such disparate treatment. (*See* Compl. ¶ 39; Affs. Accompanying Pls.' Notice of Mot.)

Defendants vigorously dispute plaintiffs' characterization of the FMP. "[The FMP] was most assuredly *not* a single event which can be analyzed in the aggregate." (Defs.' Memo. Opp'n at 9.) Instead, defendants contend, the plaintiff class members are scattered across forty-three of the sixty-nine banding entities, each subject to dissimilar treatment in almost every respect. Defendants offer the analysis of Dr. Judith Stoikov, a professor and specialist in labor economics and statistics. (Stoikov Aff. dated May 1, 1995, ¶ 1.) Dr. Stoikov argues that each banding entity must be analyzed individually. This method is more appropriate, she explains, because the probabilities of being placed at risk or being terminated or demoted involuntarily varied across the bands, (*Id.* ¶ 6), and because each band "had its own decision making team follow[ing] a unique set of guidelines to evaluate its employees and no others." (*Id.* ¶ 18.) With respect to the new hire and new promotee exclusion, defendants argue that forty-eight class members were in banding entities where the provision did not exclude anyone. (*Id.* Table 5B.)

With respect to the recent degree preference, defendants assert that some plaintiffs were in banding entities where no employee received any extra credit. (Davies Aff. dated May 15, 1995, ¶ 11.) Furthermore, Dr. Stoikov found that neither the recent degree rule, (Stoikov Aff. ¶ 9), nor the recent hire/promotion rule, (*Id.* ¶¶ 10–14), had a statistically significant adverse affect on older employees. Dr. Stoikov also rebutted plaintiffs' allegation that employees nearer to pension eligibility were over-represented among at risk or involuntarily terminated employees. (*Id.* ¶¶ 15–17.)

The plaintiffs in turn challenge the validity of the defendants' statistical methodology and argue that it is statistically improper to focus on the individual banding entities. (Madden Aff. dated June 16, 1995, ¶¶ 2, 4.) Plaintiffs point again to the common aspects of the plan and to the fact that individual employees who were at risk could take jobs in other banding entities. (Davies Aff. dated May 15, 1995, ¶ 16.) They argue that the defendants' statistical analysis, which relies upon an examination of each individual banding entity, is therefore flawed. (Madden Aff. dated June 16, 1995, ¶¶ 4, 5.) Plaintiffs' expert concluded that, on the basis of the plan as a whole, older workers were subject to a statistically significant increased probability of being put at risk. (Madden Aff. dated Aug. 29, 1994, ¶ 16.) Moreover, plaintiffs argue that their disparate impact action is not barred by the possibility that the total number of persons actually discriminated against through application of the FMP and its allegedly offending provisions may be lower than the number of class members. *See Ingram v. Madison Square Garden Ctr, Inc.,* 709 F.2d 807, 812 (2d Cir.), *cert. denied sub nom. Local Union No. 3, Int'l Bhd. of Elec. Workers, AFL–CIO v. Ingram,* 464 U.S. 937, 104 S.Ct. 346, 78 L.Ed.2d 313 (1983).

The statistical dueling is very much a matter in dispute directed at the merits of the case. It is inappropriate for the Court to determine the ultimate correctness of either parties' contentions in the context of class certification. *Selzer v. Bd. of Educ. of the City of New York,* 112 F.R.D. 176, 180 (S.D.N.Y.1986) (Lasker, J.). The correctness

of the parties' arguments on the merits will be resolved on dispositive motions or at trial. Without resolving the question, it is clear, based upon their proffered affidavits and deposition excerpts, that plaintiffs have made a substantial showing which, if believed, establishes the existence of a class as to whom there are common issues of law and fact.

Moreover, it is not necessary on this motion to address any distinction between plaintiffs' disparate impact and disparate treatment theories. It is sufficient that plaintiffs have presented substantial evidence which, if believed, demonstrates that class members were discriminated against under the auspices of and in accordance with specific provisions of a single company-wide plan. This is not·a case where individual class members bring an assortment of separate claims based on differing legal theories. Nor is it a case where similar legal claims are based on assorted and unrelated company actions, over a long period, in various locations, and in an uncoordinated manner. Rather, plaintiffs allege that specific provisions of a single corporate policy were applied in a single act to each class member in violation of New York law. *See Rossini v. Ogilvy & Mather, Inc.,* 798 F.2d 590, 599 (2d Cir.1986) (commonality requirement met where plaintiff alleged a discriminatory system implemented by a small group of company officials); *Selzer,* 118 F.R.D. at 178 n. 1 (uniform, centralized procedure); *see also Falcon,* 457 U.S. at 159 n. 15, 102 S.Ct. at 2371 n. 15 ("Significant proof that an employer operated under a general policy of discrimination conceivably could justify a class ... if the discrimination manifested itself ... in the same general fashion.") Each class member poses the same fundamental legal and factual question: Did the defendants discriminate against that person in the implementation of the Force Management Plan? Defendants' statistics address the answer to this question, not whether it is shared by members of the class. This common question amply satisfies Rule 23(a)(2).

### b. The ERISA Class

■ The *Krueger* plaintiffs make two specific claims to establish common questions of law or fact for the ERISA class. First, plaintiffs assert the defendants discharged, under the FMP, a disproportionate number of employees nearing pension eligibility thereby interfering with their pension rights. Second, plaintiffs assert that the defendants discharged, again under the FMP, employees already eligible for service pensions, to keep them from earning additional or enhanced benefits.

Defendants respond by arguing that all but two potential class members lack standing, fail to state a claim, or assert claims subject to a valid legal defense. Defendants also categorize plaintiffs according to their different factual circumstances, i.e. some plaintiffs were eligible for a monthly pension, others were eligible but elected a lump sum payment, and still others fell short of eligibility but chose a lump sum payment in lieu of deferred pension benefits. The plaintiffs deny that the class members lack standing under ERISA and present the argument that, if the terminated employees had continued to participate in the company's pension plan, "but for" their allegedly unlawful termination they would have standing under ERISA to challenge that termination. *See Mullins v. Pfizer, Inc.,* 23 F.3d 663, 667–68 (2d Cir.1994).

■ Defendants' arguments do not justify denial of class action certification. Many of the defendants' arguments present common defenses which may be asserted against nearly all members of the class, and these are common legal questions that would support a class action certification rather than argue against it. *Bishop,* 141 F.R.D. at 238 (typicality of defenses satisfies Rule 23). To the extent that there may be specific defenses against specific members of the class, they would not justify denying class action certification, *see Lorber v. Beebe,* 407 F.Supp. 279, 294 (S.D.N.Y.1975), and class counsel is well qualified to deal with any possible differences among individual class members. *See In re Lilco Sec. Litig.,* 111 F.R.D. 663, 672 n. 10 (E.D.N.Y.1986).

■ Plaintiffs have alleged that each class member was deprived of pension rights in contravention of ERISA. This allegation is a common question of law. Plaintiffs further allege that each class member's pension

rights were compromised by the operation of a single corporate act, the Fall 1992 RIF under the FMP. This allegation is a common question of fact. That various discharged plaintiffs were placed in distinct positions vis-à-vis their pension eligibility does not destroy commonality. *Accord Molina v. Mallah Org., Inc.*, 144 F.R.D. 37, 41 (S.D.N.Y.1992).

Accordingly, the Court finds the requisite commonality present for both the HRL class and the ERISA class.

### 3. Typicality

■ The Rule 23(a)(3) typicality requirement tends to merge with the commonality requirement since both serve as "guideposts for determining whether ... the class claims are so interrelated that the interests of the class members will be firmly and adequately protected." *Falcon*, 457 U.S. at 157 n. 13, 102 S.Ct. at 2370 n. 13. The same is true with respect to the Rule 23(a)(4) adequacy of representation element such that "the existence of the third and fourth prerequisites is thus influenced by [the Court's] view of the second." *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 164 (2d Cir.1987), *cert. denied sub nom., Pinkney v. Dow Chemical Co.*, 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 648 (1988). Accordingly, the Court considers the typicality and adequacy of representation issues in light of the strength with which plaintiffs have satisfied the commonality element of Rule 23.

■ The typicality element of Rule 23(a)(3) requires that the claims of the representative plaintiffs be typical of those of the class.

> [The Rule] does not require that the factual background of the named plaintiff's case be identical with that of other members of the class, but that the disputed issue occupy essentially the same degree of centrality to the named plaintiffs claim as to that of other members of the proposed class.

*Bishop*, 141 F.R.D. at 238 (quoting *Burka v. New York City Transit Auth.*, 110 F.R.D. 595, 604–05 (S.D.N.Y.1986)).

■ The *Krueger* plaintiffs assert that the six named representatives assert claims typical of those asserted on behalf of the potential class members. Each has HRL claims based on the alleged discriminatory application of the FMP. Each asserts ERISA claims alleging interference with pension rights also by means of the FMP. Each has an interest in demonstrating the unlawfulness of the allegedly discriminatory features of the FMP. If such unlawfulness is proven, the benefits would accrue to all members of the class.

Defendants rely heavily on the same arguments proposed to defeat commonality—arguments addressed to the merits of both the HRL and ERISA claims. As explained above, arguments on the merits simply cannot be resolved in the context of a class certification motion. The plaintiffs have laid a sufficient evidentiary foundation which, if believed, supports their allegations of common questions of law and fact. That same evidentiary basis counters defendants' contention that plaintiffs' claims are not typical of those of the class. Plainly, they are.[5] The Court is satisfied that the representative plaintiffs' claims are typical of those of both the HRL class and the ERISA class.

### 4. Adequacy of Representation

■ The fourth and final requirement of Rule 23(a) is adequacy of representation. This requirement consists of two elements: (1) the qualification, experience and ability of plaintiffs' attorneys; and (2) the absence of any substantial antagonism between the named plaintiffs and the class members. *Gruby v. Brady*, 838 F.Supp. 820, 826 (S.D.N.Y.1993). Plaintiffs' counsel have presented affidavits attesting to their experience and qualifications, and there being no objection by defendants, the Court is satisfied that

---

**5.** This is not a case like *Amswiss Int'l Corp. v. Heublein, Inc.*, 69 F.R.D. 663 (N.D.Ga.1975), on which defendants rely. In *Amswiss*, the court found that typicality was lacking because the "plaintiff may not have to prove one of the critical elements of the absent class members' case in order to recover." *Id.*, 69 F.R.D. at 668–69.

Here, by contrast, none of the *Krueger* representative plaintiffs assert any alternative theories of their own, much less a theory that requires different standards or degrees of proof. Consequently, the concerns addressed in *Amswiss* simply are not extant in the present case.

plaintiffs' attorneys are fully competent to conduct this litigation. *See County of Suffolk v. Long Island Lighting Co.*, 710 F.Supp. 1406, 1407 (E.D.N.Y.1989), *aff'd*, 907 F.2d 1295 (2d Cir.1990); *In re Lilco Sec. Litig.*, 111 F.R.D. at 672 n. 10.

 Defendants do argue that there are conflicts among class members.[6] Defendants point out that seventeen potential class members were evaluated or appraised during the FMP by five NYT employees who are also in the potential class. Defendants assert that these evaluations were used in the process of banding employees or in the appraisal of employees within the banding entities. Defendants conclude that a conflict arises because these evaluations "affected the RIF status," (Def.Mem. Opp'n at 24), of fellow class members, putting some plaintiffs "in the position of accusing fellow class members of actions that resulted in their being terminated on account of their age." (*Id.* at 9.)

The Court is persuaded that the nature of the conflict raised by defendants is not even remotely likely to result in the representative plaintiffs inadequately pursuing the interests of the class. The named plaintiffs have alleged the same interests and injuries as the class. All class members, including the named plaintiffs, assert identical HRL and ERISA claims based on the implementation of the FMP and its allegedly discriminatory provisions. Even assuming the existence of personal animosity directed towards the five class members alleged to have taken part in evaluations and appraisals, there is nothing to indicate that these five class members, or the seventeen with whom they interacted, do not share the common claims with each other and with over 130 other potential class members.

 Aside from the inference defendants would have the Court draw, no evidence is proffered indicating that the named plaintiffs would not adequately represent the common interests of the class. While defendants warn of the presence of some nascent conflict between certain plaintiffs, "only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Kuck v. Berkey Photo, Inc.*, 81 F.R.D. 736, 740 (S.D.N.Y.1979) (quoting 7 Wright & Miller, Federal Practice & Procedure § 1768, at 639 (1972)). Because the HRL and ERISA claims focus on a company-wide policy, the fact that a handful of class members participated to a small degree in the evaluation or appraisal of other class members during the time the FMP was implemented is insufficient to create any appreciable friction between the interests of the representative plaintiffs and those of the class. *See Gruby*, 838 F.Supp. at 827 ("'[C]lass certification should not be denied by speculative suggestions of potential conflicts.'") (quoting *Breedlove v. Tele–Trip Co., Inc.*, No. 91–5702, 1993 WL 284327, at *7 (N.D.Ill. July 27, 1993)). Additionally, class counsel can effectively ensure that the interests of the class are pursued and that any differences among class members do not prevent the pursuit of common claims. *See County of Suffolk*, 710 F.Supp. at 1417; *In re Lilco Sec. Litig.*, 111 F.R.D. at 672 n. 10.

Accordingly, and in light of the strong presence of commonality and typicality in this case, *see Falcon*, 457 U.S. at 157 n. 13, 102 S.Ct. at 2370 n. 13 (typicality and commonality "also tend to merge with the adequacy-of-representation requirement...."), the Court finds the plaintiffs have satisfied Rule 23(a)(4).

---

6. Defendants also argue that the class representatives are unable to finance the litigation based on the plaintiffs' failure to disclose certain financial information. The plaintiffs did affirm their responsibility to pay litigation costs. (*See* Birnbaum Aff. dated June 19, 1995, Ex. E.) While "[t]he ability of a class representative to defray the cost of litigation is a relevant factor in the court's determination of the representative's suitability[,]" *Moll v. U.S. Life Title Ins. Co. of New York*, 113 F.R.D. 625, 632 (S.D.N.Y.1987), it is sufficient that plaintiffs state they are willing to pay their share. *Dennis v. Saks & Co.*, 20 F.R.Serv.2d 994 (S.D.N.Y.1975). Absent any contention that litigation costs will not be paid, there is "no valid basis for questioning plaintiff[s] about [their] financial resources." *Kamens v. Horizon Corp.*, 81 F.R.D. 444, 447 (S.D.N.Y. 1979); *see also In re AM Int'l, Inc. Sec. Litig.*, 108 F.R.D. 190, 198 n. 10 (S.D.N.Y.1985). The Court is satisfied, based upon their affidavits and depositions, that the named plaintiffs understand and acknowledge their responsibilities.

## 444

### B. *Rule 23(b):*

 The final requirement for class certification is that one of the three types of class actions under Rule 23(b) be appropriate. Plaintiffs argue that both the HRL class and the ERISA class satisfy the requirement of Rule 23(b)(2) [7] which authorizes a class action where:

> [T]he party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Fed.R.Civ.P. 23(b)(2).

There is no question that plaintiffs have presented allegations supported by substantial evidence which, if believed, show discrimination by defendants against the entire class. *See Selzer*, 112 F.R.D. at 180. Given that plaintiffs seek injunctive relief, the Court finds that Rule 23(b)(2) is satisfied.

In accordance with the foregoing, the Court is satisfied that the *Krueger* plaintiffs have satisfied Rule 23(a) and Rule 23(b)(2) for both the HRL claims and the ERISA claims and hereby grants the motions for certification.

### III.

 Both the *Krueger* and *Carroll* plaintiffs seek authorization from the Court that their actions be certified to proceed as collective actions for the ADEA claims, pursuant to 29 U.S.C. § 626(b) which incorporates § 16(b) of the FLSA, which provides that:

> An action to recover the liability prescribed ... may be maintained against any employer ... by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). There are two conditions for maintaining a collective action. First, the named plaintiffs and the proposed members of the class must be "similarly situated." Second, the proposed class members must consent in writing to be bound by the result of the suit, or "opt-in." *Sperling v. Hoffman–La Roche, Inc.*, 118 F.R.D. 392, 399 (D.N.J.), *aff'd*, 862 F.2d 439 (3d Cir.1988), *aff'd*, 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). To facilitate the operation of the opt-in mechanism and further the remedial purpose of ADEA, district courts have discretion to authorize plaintiffs to send notice to prospective plaintiffs. *Hoffman–La Roche Inc. v. Sperling*, 493 U.S. 165, 169–70, 110 S.Ct. 482, 485–86, 107 L.Ed.2d 480 (1989). The *Krueger* and *Carroll* plaintiffs received authorization to send notices in 1993. *Krueger v. New York Tel. Co.*, Nos. 93 Civ. 0178, 93 Civ. 0179, 1993 WL 276058 (S.D.N.Y. July 21, 1993) (McKenna, J.). The *Krueger* plaintiffs now seek authorization to proceed on behalf of 157 consent signers. The *Carroll* plaintiffs seek authorization on behalf of five consent signers. To grant these authorizations, the Court must be satisfied, in each case, that the consent signers are similarly situated to the named plaintiffs. *Heagney v. European American Bank*, 122 F.R.D. 125 (E.D.N.Y.1988). "[T]here must be a demonstrated similarity among the individual 'situations,' ... [i.e.] some identifiable factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged discrimination." *Palmer v. Reader's Digest Ass'n*, 42 Fair Empl.Prac.Cas. (BNA) 212 (S.D.N.Y. 1986).[8]

---

**7.** Plaintiffs also argue that class certification is appropriate for both the HRL and ERISA claims under Rule 23(b)(3) which authorizes a class action where common questions of fact or law predominate. Because the Court grants class certification under Rule 23(b)(2), it is unnecessary to reach this argument.

**8.** The parties correctly do not dispute that the "similarly situated" standard is proper when authorizing an "opt in" collective ADEA action under § 216(b). *Heagney*, 122 F.R.D at 126 n. 1 ("Section 216(b) displaces the class action devices of Fed.R.Civ.P. 23, which are accordingly unavailable in an ADEA case."); *see Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 265 (D.Minn.1991) ("Unlike employment discrimination cases under Title VII, ADEA class actions are not governed by [Rule] 23.").

The "similarly situated" standard is also applied when a party seeks notice authorization in order to obtain written consent. *See, e.g., Schwed v. General Electric Co.*, 159 F.R.D. 373 (N.D.N.Y.1995); *Frank v. Capital Cities Communications, Inc.*, 88 F.R.D. 674 (S.D.N.Y.1981). When the *Krueger* and *Carroll* plaintiffs were granted authorization for notice the Court found that the putative class members were similarly situated, *Krueger*, 1993 WL 276058, at *2, observing that:

> Plaintiffs have identified two ranking criteria that could support a disparate impact analysis under the ADEA which were employed in all of the banding entities into which plaintiffs and those similarly situated were divided. Moreover, alleged statements from certain NYT employees may also support plaintiffs' claims. *Defendants' FMP, however diffuse its implementation, appears nevertheless to have been a single plan contemplating reduction of defendants' staff within a tightly proscribed period.*

*Id.* (emphasis added). The Court noted that defendants' objections to notice were addressed to the merits of the claims and were misplaced on a motion seeking notice authorization. *Id.* Nevertheless, the Court indicated that its determination that potential class members were similarly situated was by no means final. "[E]ven if plaintiffs' claims turn out to be meritless or, in fact, all the plaintiffs turn out not to be similarly situated, notification at this stage, rather than after further discovery, may enable more efficient resolution of the underlying issues in this case." *Id.*

The time for further consideration has now arrived. Defendants are correct that this action is no longer at the preliminary notice stage. *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir.1995) (describing inquiry at preliminary notice stage and again after discovery is largely complete). Substantial discovery has been taken. Indeed, less than six weeks remain until all discovery must be complete. The parties have submitted extensive evidentiary materials for and against class action certification. The parties positions as to whether the representative plaintiffs are similarly situated with the consent signers are based on the same affidavits and deposition citations on which the parties rely for the class action determination. For all of the reasons that the Court has already found this action should proceed as a class action, and because the representative plaintiffs have satisfied the commonality and typicality requirements of Rule 23(a)(2) and (a)(3), it is equally true that the named plaintiffs are similarly situated to the other members of the ADEA class.

The logic supporting Judge McKenna's finding that the potential *Krueger* and *Carroll* class members were similarly situated and that sustained the granting of notice authorization remains intact on the present motion to authorize the collective action. Plaintiffs continue to contend that the new hire and recent promotee exclusions and the recent degree preference were discriminatory elements of a company-wide plan under which "the putative class members were together victims...." *Sperling v. Hoffman–La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988). As explained above, the plaintiffs' evidence, if believed, supports those allegations. Plaintiffs also contend that the FMP was "infected by discrimination," such that class members suffered company-wide discriminatory treatment. Defendants continue to argue that the FMP did not discriminate in fact, an argument on the merits that does not refute plaintiffs' contention that the FMP and its allegedly discriminatory components were applied to the plaintiff classes.[9] Ac-

---

9. In a recent unpublished opinion, Judge Amon of the Eastern District of New York denied notice authorization and granted defendants summary judgment in a similar case involving another NYNEX subsidiary's implementation of the FMP. *Fazzino v. Telesector Resources Group*, 93 Civ. 485 (E.D.N.Y. Aug. 23, 1995). The facts of *Fazzino*, however, are distinguishable. First, the NYNEX subsidiary, Telesector Resources Group ("TRG"), did not employ the recent hire exclusion. *Id.* at 30 (undisputed statistics showed recent hires were *not* excluded). Second, while positive credit was given for employees who had received a degree, "the recency of the degrees was not a factor in determining such credit." *Id.* Third, while the *Fazzino* plaintiffs did allege disparate treatment based on comments made by decisionmakers at TRG, these allegations were unsupported by statistical evidence, *id.* at 28–29 (statements alone insufficient to raise inference of discrimination), and the comments made by a

cordingly, the Court finds that the consent signers in *Krueger* are similarly situated to the named *Krueger* plaintiffs and an ADEA collective action pursuant to § 216(b) is authorized. Likewise, the Court finds the consent signers in *Carroll* are similarly situated to the named *Carroll* plaintiffs and a collective action is authorized.

## IV.

In conclusion, the Court grants each of plaintiffs' motions and orders that:

1. The *Krueger* plaintiffs and consent signers are authorized to proceed with their ADEA claims as a collective action under 29 U.S.C. § 216(b). Further, the *Krueger* HRL and ERISA classes are certified under Fed. R.Civ.P. 23(b)(2). Each class is identical to and coextensive with the ADEA class. The HRL class is defined as "all former New York Telephone employees age 40 and older who were discharged or otherwise discriminated against because of their age in the implementation of the FMP and who have given their written consent to being part of the ADEA collective action." The ERISA class is defined as "the named plaintiffs and all other former NYT employees who were, or would have become eligible for defendants' service pension or other additional pension benefits but who were discharged under the FMP in order to interfere with their attainment of service pension benefits or additional pension benefits, and who have given their written consent to being part of the ADEA collective action."

2. The *Carroll* plaintiffs and consent signers are authorized to proceed with their ADEA claims as a collective action under 29 U.S.C. § 216(b). The *Carroll* plaintiffs' motion for the Court to take supplemental jurisdiction over the HRL and ERISA claims of the five consent signers is withdrawn.

**SO ORDERED.**

spokesperson were not made on behalf of TRG. *Id.* at 24–26. Fourth, the *Fazzino* ADEA class of 21 consent signers involved fewer banding entities and permitted a definitive finding of no discriminatory impact. The Court found that "plaintiffs' statistical evidence [failed] to support their contention that defendant engaged in a pattern or practice of discrimination." *Id.* at 41.

In the present case, involving significantly more consent signers across many more banding entities, the defendants do not deny that the recent hire and recent promotee exclusions were applied in the New York Telephone RIF, although they deny there was any impact. Nor do they deny that credit for degrees was awarded based on recency. In fact, even defendants' expert recognizes that such a company-wide criteria may be biased. (*See* Stoikov Aff. dated May 1, 1995, at 5 ("Hypothetically, [the recent degree factor] may have an adverse affect on older em-

ployees....").) Defendants' main thrust is to challenge the assertion that the application of these two criteria were discriminatory by analyzing each of the 69 banding entities individually. This methodology is disputed vigorously by plaintiffs who analyze the FMP's effect on NYT as a whole and offer statistics indicating that, measured on an aggregate basis, employees over 40 were more likely to be discharged or otherwise discriminated against.

The presence of these differences makes the *Fazzino* decision inapposite here. *Cf. Ulvin v. Northwestern Nat'l Life Ins. Co.*, 141 F.R.D. 130 (D.Minn.1991) (denying collective action authorization; plan included no alleged discriminatory company-wide provisions); *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1215 (5th Cir.1995) (affirming denial of collective action; no company-wide plan to provide "common thread unifying plaintiffs' claims").